[No. 3216.  Decided March 10, 1900.]

The State of Washington, *Respondent*, v. Joseph
Crotts, *Appellant*.

TRIAL—EXAMINATION OF WITNESSES BY COURT—COMMENT ON FACTS.

Where the court, in a criminal case, asks leading questions of
a witness in such a way as to convey to the minds of the jury
the court's opinion of what the evidence tended to show, it
amounts to a comment on the facts, within the prohibition of
art. 4, § 16, of the constitution.

SAME—APPEAL—REVIEW IN ABSENCE OF EXCEPTIONS.

The action of the court in commenting on the facts in a
criminal case being an invasion of the constitutional rights of
the accused, such action may be reviewed on appeal, although no
exception or objection was interposed at the time.

Appeal from Superior Court, Pierce County.—Hon.
W. H. H. Kean, Judge.  Reversed.

*Emmett N. Parker* and *B. A. Crowl*, for appellant:

The trial judge has no greater right to ask improper
questions than counsel.  Indeed, upon principle his right
should be even less where the constitutional prohibition
exists as to his commenting on the facts; and when the
judge asks an improper question in the form of a leading
and suggestive one, by reason of his position it necessarily
is much more prejudicial than when coming from counsel.
It is not only a greater inducement for the witness to
give the answer suggested, but at the same time informs
the jury of the court's opinion of what the answer ought
to be.  *People v. Lacoste*, 37 N. Y. 192; *People v. Hull*,
86 Mich. 449 (49 N. W. 288); *Fager v. State*, 22 Neb.
332 (35 N. W. 195); *Dunn v. People*, 50 N. E. 137;
*Bolte v. Third Ave. R. R. Co.*, 56 N. Y. Supp. 1038;
*Wheeler v. Wallace*, 19 N. W. 33.

Where the law or constitution is mandatory that the court shall do or not do a particular thing, no failure of objection or exception should stand in the way of considering error based on a violation of such provision. *People v. Wallace,* 26 Pac. 650; *Cancemi v. People,* 18 N. Y. 137.

*George H. Walker,* Prosecuting Attorney (*Walker & Fitch* and *R. W. Jamieson,* of counsel), for the State:

It is in the discretion of the court to allow counsel to ask leading questions, and there is no reason why the court may not of its own motion ask questions in that form. *People v. Bowers,* 18 Pac. 660; *Wilson v. Ohio River & C. Ry. Co.,* 30 S. E. 406; *Huffman v. Cauble,* 86 Ind. 591; Thompson, Trials, § 355. The following cases are also in point: *State v. Duncan,* 7 Wash. 336 (38 Am. St. Rep. 888); *White v. White,* 23 Pac. 276; *State v. Burwell,* 35 Pac. 780; *People v. Goldenson,* 19 Pac. 161; *State v. Noakes,* 40 Atl. 249; *State v. Stephens,* 70 Mo. App. 554; *Davis v. State,* 70 N. W. 984; *State v. Walters,* 7 Wash. 246; *State v. Burns,* 19 Wash. 52; *Livesley v. Pier,* 11 Wash. 268; *Earles v. Bigelow,* 7 Wash. 581.

The opinion of the court was delivered by

DUNBAR, J.—The defendant was tried on an information charging him with the crime of murder in the first degree, and upon the cause being submitted to the jury a verdict was returned finding him guilty of manslaughter. Judgment was entered, and an appeal is brought here on errors alleged to have been committed by the court.

The first error alleged is the action of the court in asking leading questions of the witnesses, and asking them in such a way as to violate § 16, art. 4, of the constitution, which provides that judges shall not charge juries with respect to matters of fact, nor comment thereon. In this case, while the witness Strachan was relating circum-

stances attending the affray, and during the cross-examination by defendant's counsel, the court interposed as follows:

" Q.   When you raised your cue that time and threatened the deceased, and commanded him to put down the dipper, you say that he threw it down.   Now, do you think that was done in obedience to that command ?

A.   Yes, sir.

Q.   He seemed at that time to subside ?

A.   Yes, sir.

Q.   And yield ?

A.   Yes, sir.

Q.   And had apparently consented to stop his quarreling ?

A.   Yes, sir.

Q.   And at that time, then, the affray seemed to have the appearance of being at an end, as far as he was concerned ?

A. · Yes, sir."

Again, when counsel for the defense was cross-examining the witness Patton, who had testified in detail as to how the deceased was acting at the time the fatal shot was fired, the court interposed the following questions:

" Q.   Was Mr. Snell at that time, or did he have the appearance of, giving up the trouble ?

A.   Yes, sir."

At this point counsel for defendant interposed the following objection:

" If your honor please, we desire to object.   I believe we have the right to object to the court's asking a question, if we believe it is immaterial.   We ought to have objected to similar questions yesterday, because—well, our ground simply is that they are leading, and that they are leading away from the interests of the defendant.   They are leading in the interests of the state.   I don't say but what it is proper for the court sometimes, and very often, to ask questions, and I am not objecting to it on that ground, but

I object to it just for the same reason as if the prosecuting attorney was asking that.

Court.    As I understand the rule, the court may ask any questions that it sees fit, if it be leading or otherwise.

Mr. Parker.    Yes, sir; I think it has, too; but I think that is governed by the same rules.

Court.    Objection overruled.

Mr. Parker.    We ask an exception.

Court.    Exception noted.

Q.    You answered the question?

A.    Yes, sir.

By Mr. Farley (for the state):

Q.    So the jury can hear what was the answer to the question?

A.    I said he was not in the act of going any further in the struggle; he seemed to be giving up the fight."

The defendant in this case was relying upon self-defense, so it will be seen that the interrogatories of the court were concerning material questions involved in the case.

It is urged by the respondent that, as no exceptions were taken by the defendant to the questions propounded by the judge at the time they were propounded, under the general rule, and under the rulings of this court, no basis for a determination of those questions in this court has been laid.    It is true that the ordinary rule is in consonance with the ruling, frequently announced by this court, that alleged errors will not be reviewed without they are excepted to at the time they are committed; but we do not think the error alleged in this instance falls within the rule, nor that the rule should be enforced when its observance would tend to destroy the very object for which the objection is ordinarily made.    An attorney is placed in a delicate position under such circumstances.    It is dangerous for him to enter into a controversy with the court in relation to matters and proceedings which the court itself is instituting.    The court should not place counsel in this

position without it becomes absolutely necessary for the furtherance of justice. In this case the defendant's counsel had to choose between the probability, or at least the possibility, of prejudicing his case in the minds of the jury by reason of his expressed opposition to the course pursued by the court, or else lose the benefit of an objection which he was entitled to make. We do not think counsel should be compelled to imperil their cause in the lower court for the purpose of protecting their rights in the appellate court. Besides, in this case, upon the second effort of the court in this direction, counsel, probably feeling that it could not in safety be tolerated longer, objected to the questions propounded by the court and suggested the error which, in his judgment, the court had committed the day before, when his objections were overruled and he was cavalierly informed that the court could ask any questions that it saw fit; and this controversy was especially called to the attention of the jury by the interposition of the prosecuting attorney, who insisted that the question asked by the court should be answered so that the jury could hear it.

Again, where the constitutional right has been invaded, it has been held by this court that no failure of objection or exception should stand in the way of considering errors based on the violation of such provisions.

In *Linbeck v. State,* 1 Wash. 336 (25 Pac. 452), it was held that, where the defendant in a prosecution for burglary was not sworn as a witness in his own behalf, it was error for the court not to instruct the jury that from such fact no inference of guilt should be drawn against the defendant; and the fact that the defendant remained silent did not amount to a waiver of such right. And in that case it was said:

" The statute in question makes it the duty of the court to give such instruction, irrespective of the action of the

defendant in relation thereto, and while we do not now hold that the right to have this instruction given may not be waived by some express act of the defendant to that end, we do hold that the simple fact that he remained silent did not amount to such waiver."

In this case the constitution emphatically prohibits the judge from charging the jury with respect to matters of fact, or from commenting thereon; so that the duty was as imperative on the court not to comment on the facts, as it was in *Linbeck v. State* to give such instructions as the statute made it its duty to give.

In *Freidrich v. Territory*, 2 Wash. 358 (26 Pac. 976), it was held that, although there was no exception to the whole or a part of the charge on the ground that it is an argument upon the facts, yet, in a capital case, if there is prejudicial error, which is patent upon the face of the record, denying the accused the fair and impartial trial which is his right, the supreme court will not allow these technical objections to deprive the defendant of a new trial.

In *State v. Myers*, 8 Wash. 177 (35 Pac. 580), it was held, following *Linbeck v. State, supra*, that, where the accused in a criminal prosecution fails to testify in his own behalf, it is the duty of the court, under the statute, without an affirmative request therefor, to charge that no inference of guilt should arise against the defendant on account thereof.

There are different ways by which a judge may comment upon the testimony, within the meaning of the constitution referred to above. The object of the constitutional provision, doubtless, is to prevent the jury from being influenced by knowledge conveyed to it by the court of what the court's opinion is on the testimony submitted. The constitution has made the jury the sole judge of the weight of the testimony and of the credibility of the wit-

nesses, and it is a fact well and universally known by courts and practitioners that the ordinary juror is always anxious to obtain the opinion of the court on matters which are submitted to his discretion, and that such opinion, if known to the juror, has a great influence upon the final determination of the issues. This information can be conveyed as readily to the jury by leading questions asked of them, and the manner of the judge in asking such questions, as by a direct comment upon the testimony in the charge to the jury. A glance at the questions asked by the court in this case of witness Strachan is sufficient to show that it was the intention of the court to have the idea conveyed to the jury that the deceased had subsided from any demonstrations which he had been making, before the fatal shot was fired, and the effect upon the jury was identically the same as though he had told them that the evidence tended to show this state of facts. We have examined the cases cited by the respondent to sustain the action of the court in this respect, but we do not think they are in point. There is no other constitution that we have been able to find that is as prohibitive of the action of the court in this respect as ours. Most of them are to the effect that the judge shall not charge the jury in respect to matters of fact. Ours, it will be noticed, goes beyond that, and provides that they shall not comment thereon; indicating by its very language that comments could be indulged in by the court otherwise than by its charge to the jury.

Again, outside of any constitutional provision, these questions were leading; they would not have been tolerated for a moment, had they been asked by counsel. There can be no principle of law in the administration of justice that will allow a court to ask an incompetent question, any more than counsel. It is true that courts may sometimes ask leading questions; but, under such circumstances, it

would be proper for the court to permit counsel to ask leading questions; but they must be asked neither by the court nor the counsel excepting when the necessity exists therefor; and there was no necessity shown in this case. Courts may frequently indulge in asking questions in furtherance of justice, when there has been an omission on the part of the officers of the state which would tend to bring about a miscarriage of justice; but even then such questions must be competent questions. Rules of law governing the admission of testimony, and questions tending to elicit facts, are made for the benefit and the protection of parties litigant; and the protection should be guaranteed as certainly when a question is asked by the court as when asked by counsel in the case. The cases cited by the respondent are to the effect that the asking of leading questions is a matter which is largely discretionary with the trial court, and will not be reviewed by the appellate court unless such discretion has been abused; and the cases cited all state the fact generally, without giving the particular instances of alleged abuse, that it does not appear in such cases that discretion was abused; but in this case counsel of recognized ability was conducting the case for the state; the examination and cross-examination of the witnesses were conducted in a skillful manner, and the witnesses in question were not unwilling witnesses; and there is nothing whatever in the record tending to show that the character of the examination indulged in by the court was necessary. That it had an influence on the minds of the jury prejudicial to the interests of the defendant can readily be conceived from an investigation of the record.

So far as the other alleged errors are concerned, we are inclined to think they are without merit, under the former rulings of this court, and we will therefore not enter into a discussion of them here; but for the error discussed the judgment will be reversed and a new trial granted.

GORDON, C. J., and FULLERTON, REAVIS and ANDERS, JJ., concur.