[No. 15431.  Department Two.  December 22, 1919.]

THE STATE OF WASHINGTON, *Respondent*, v.
JAKE HERWITZ, *Appellant*.[1]

CRIMINAL LAW (216, 217)—TRIAL—UNLAWFUL COMMENT ON EVI-
DENCE.  Where, during examination of a witness, counsel emphat-
ically insinuated that the witness is testifying falsely, he is properly
rebuked by reminding him that he was not a witness.

SAME (217).  It is not unlawful comment, in rejecting certain
exhibits the materiality of which did not then appear, to give
reasons for excluding them; nor, when subsequently admitted, would
the evidence be discredited because once rejected.

SAME (217).  Upon a direct issue as to the credibility of one of
the witnesses testifying on a material point, it is unlawful comment,
within the prohibition of Const., art. 4, § 16, for the trial judge to
state to the witness that his record is as good as anyone's and that
he is a perfectly credible witness and has not been impeached.

SAME (391-1)—APPEAL (444)—COMMENT ON EVIDENCE—CURE BY
INSTRUCTIONS.  Unlawful comment on the evidence of a prejudicial
nature in violation of Const., art. 4, § 16, cannot be cured by in-
structions to the jury to disregard it.

CRIMINAL LAW (292)—INSTRUCTIONS—REASONABLE DOUBT.  It is
error to refuse to instruct that reasonable doubt may arise from lack
of evidence as well as from the evidence given, where the instruc-
tions elsewhere given did not cover the point.

Appeal from a judgment of the superior court for
King county, Frater, J., entered October 15, 1918, upon
a trial and conviction of larceny.  Reversed.

*Jones, Riddell & Brackett* and *Paul Carrigan* (*Piles
& Halverstadt*, of counsel), for appellant.

*Fred C. Brown* and *John D. Carmody*, for re-
spondent.

FULLERTON, J.—The appellant was convicted of lar-
ceny, and appeals from the judgment and sentence
pronounced against him.

[1] Reported in 186 Pac. 290.

The appellant conducts a pawn-shop in the city of Seattle. One Tyrrell, on three separate occasions, purchased from him gold coins for currency, paying a premium of five per cent. On one of these occasions, the appellant told Tyrrell that he could procure for him all of the gold he wished for a like premium. At a day later than the last of these purchases, Tyrrell, according to his testimony, left with the appellant eight hundred dollars in currency, for which the appellant agreed to procure for him a like amount in gold coin to be delivered in the afternoon of the same day on his paying the usual premium. The appellant did not procure the coin as agreed, nor at any time, and refused to return the currency. It was for the larceny of the currency that the appellant was convicted.

The appellant assigns that the court erred, (1) in commenting, in the course of the trial, derogatory of the appellant's counsel; (2) in commenting in a manner derogatory of the evidence of the appellant; (3) in commenting on the evidence; and (4) in its instructions to the jury.

With reference to the first assignment, a witness for the state had testified to a conversation between the appellant and Tyrrell concerning the disposition of the currency which he had overheard and which he said occurred in the business place of the appellant. On cross-examination, the witness was interrogated relative to the persons present at the time of the conversation, stating that among the persons at the place was the clerk of the appellant, who was on the other side of a counter immediately in front of the witness. He further stated that the conversation between Tyrrell and the appellant was conducted "in a fairly large tone of voice, not extraordinarily large," but

that he was certain that the clerk did not hear it. The record then discloses the following:

"Mr. Carrigan (cross-examining): Q. You say the man was right across the counter from this conversation and did not hear it? A. Sure. Q. You are pretty sure he did not hear it? A. I am. Q. You are pretty sure he did not hear any such conversation? A. Yes. Mr. Carrigan: I am equally sure of that. The Court: You had better be sworn, Mr. Carrigan, before you testify."

No exception was taken to the court's remark, and the cross-examination proceeded with regard to other matters. The appellant insists that the remark of the court tended to discredit his counsel before the jury and was so far prejudiced as to entitle him to a reversal. But we cannot so regard it. The statement of counsel was in itself improper. It contained the insinuation that, in the belief of counsel, the conversation related by the witness did not occur and that the witness had testified falsely. While at the appropriate time in the course of a trial counsel may properly argue to the jury that a witness' testimony is unworthy of credence because indicative of bias or prejudice, or is out of the ordinary, or for other causes appearing in the record, the appropriate time is not when the witness is testifying. The remark, therefore, merited rebuke, and the court did not overstep its proper bounds in administering a rebuke. Nor do we think the form of the rebuke objectionable. Counsel made an emphatic statement as to his belief concerning a matter which was the subject of inquiry, and it was not inappropriate to remind him that he was not a witness.

During the examination of the appellant, he testified concerning a purchase of gold pieces he had made from a third person in the presence of the prosecuting

witness, and concerning a pennant which he copyrighted. These were offered in evidence and rejected on objection from the state, the court remarking: "I do not think they are material unless disputed. They might become material. The objection on the ground of materiality is sustained. There is nothing material about them. Proceed."

After the examination had proceeded further, a separate offer of the gold pieces was made and they were admitted without objection. The remarks of the court at the time of the first offer forms the basis of the second assignment of error. But while it may be that the court went further in giving his reasons for rejecting the testimony than the circumstances warranted, we cannot think there was error committed. At this time, the materiality of the exhibits did not appear, and it was not a comment on the evidence within the meaning of the constitutional prohibition for the court to give a reason for excluding them. *State v. Surry,* 23 Wash. 655, 63 Pac. 557; *Dunkin v. Hoquiam,* 56 Wash. 47, 105 Pac. 149; *State v. McDowell,* 61 Wash. 398, 112 Pac. 521, Ann. Cas. 1912C 782, 32 L. R. A. (N. S.) 414. Nor can we think the exhibits were in any way discredited because once rejected on the ground of immateriality. By their subsequent admission as evidence the jury would understand that the court deemed them material for their consideration, and would understand, also, that the change of opinion on the part of the court arose because of the facts developed in the further progress of the trial. Plainly, they could not have understood that evidence rejected because of immateriality when first offered was so regarded by the court when afterwards admitted.

The appellant, while a witness in his own behalf, denied that the prosecuting witness had ever left with

him the sum of eight hundred dollars, or any sum, for the purchase of gold, or for any purpose, and gave a very plausible explanation of the other circumstances thought by the state to inculpate him. In the main he was corroborated by his clerk, and was able to, and did, procure witnesses who testified to his honesty and veracity. In rebuttal, the state called a police officer who testified that the appellant stated, at the time of his arrest, that the only time he had seen the prosecuting witness was when the prosecuting witness was at his place of business for the purpose of buying a pendulum clock. It had been given in evidence that the prosecuting witness had been at the appellant's place of business at one time for the purpose indicated, and in cross-examination the officer was questioned somewhat closely whether the appellant had used the word "only" when stating the fact to him. In the course of the cross-examination, the officer evidently thought his veracity was being questioned, and volunteered the remark that he was perfectly willing to compare his record with the record of his cross-examiner. At this stage of the proceedings, the court interrupted the proceedings, saying to the witness:

"Your record is just as good as anybody's when you are under oath here, as far as this court is concerned, and this jury, too. You are a perfectly credible witness before this court, and you have not been impeached."

These remarks of the court furnish the foundation for the third assignment of error. It is contended that it is within the prohibition of § 16, art. 4, of the state constitution, which provides that judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law. That it was a comment on a matter of fact, there can be but little question. There was an issue as to whether the ap-

pellant had stated to the witness, or in the hearing of the witness, that the only time he had seen the prosecuting witness was when the witness was at the appellant's place of business for the purpose of purchasing a pendulum clock, and on this question there was, on the one side, the evidence of the appellant disputing the statement, while on the other, there was the evidence of the witness affirming it. The credibility of the respective witnesses was thus at issue, and for the judge to declare that one of the witnesses was "a perfectly credible witness before this court," and that he had "not been impeached," was plainly a comment adverse to the appellant on a matter of fact which was the sole province of the jury to determine. Standing alone, therefore, it was manifest error, requiring a reversal of the judgment of conviction which was afterwards pronounced against the appellant. *State v. Coella,* 3 Wash. 99, 28 Pac. 28; *State v. Walters,* 7 Wash. 246, 34 Pac. 938, 1098; *State v. Crotts,* 22 Wash. 245, 60 Pac. 403; *State v. Primmer,* 69 Wash. 400, 125 Pac. 158; *State v. Jackson,* 83 Wash. 514, 145 Pac. 470; *State v. Smith,* 103 Wash. 267, 174 Pac. 9; *Eckhart v. Peterson,* 94 Wash. 379, 162 Pac. 551.

The trial court, however, at the time exception was taken to his remarks, instructed the jury that they were to be given no consideration by them, and in his general instructions told them that they were the exclusive judges of the facts and of the credibility of the witnesses. It is the contention of the state that the error committed by the comment was cured by these instructions and that reversible error cannot now be predicated thereon. There are, of course, many errors which may be committed at one stage of the trial that can be arrested and cured by the action of the court at a later stage. Without specifically referring to the cases, we have held that error committed in admission

of incompetent, irrelevant or immaterial evidence can be cured by the subsequent withdrawal of the evidence from the jury, and have held that improper remarks of counsel, although in nature prejudicial, can be cured by instructing the jury to disregard them. But no case has been cited us, and we can recall none, where we have held that a comment by the trial judge on the evidence, prejudicial in its nature, can be cured by a subsequent instruction to the jury to disregard it. On the contrary, the criminal cases above cited proceed upon grounds inconsistent with such a theory, and the civil case cited directly holds that it cannot. In the latter case (*Eckhart v. Peterson,* 94 Wash. 379, 162 Pac. 551), the action was for personal injuries suffered as the result of an assault and forcible rape. A witness was testifying to certain indecent liberties he had with the plaintiff, and to an offer on her part to submit to an act of sexual intercourse for money. In the course of his testimony, an objection was interposed, which the court overruled, the judge remarking when making the ruling: "You might call the prosecutor in here though—never mind, go ahead with the story." This was assigned as error, and this court, speaking by Chief Justice Ellis, used this language:

"This was a most damaging comment, either upon the character of the witness or upon the credibility of his testimony. True, no exception was taken to the court's remark, and he did instruct the jury in his general charge and in a general way to disregard any remarks of court or counsel. But under the rule announced in *State v. Jackson,* 83 Wash. 514, 522, 145 Pac. 470, these things cannot be permitted to preclude an insistence by a party upon his constitutional right to have his evidence submitted to the jury without comment by the court, when, as here, we cannot say that an instruction to disregard such comment would have removed its effect."

On principle, it would seem that errors of this sort, when prejudicial, cannot be cured by the means attempted. In the first place, such an instruction does not effect a cure. One of the purposes of the inhibition is to keep from the jury the opinion of the trial judge on questions of fact which the jury are to determine, and when the opinion of the judge is once made known to the jury, plainly no subsequent instruction can remove from the minds of the jurors the knowledge acquired thereby; at best, such instructions can only mitigate the offense. It is not to be understood, of course, that we here assert that every comment made by the trial judge on a matter of fact in evidence will work a reversal, regardless as to which of the parties may assign it as error. On the contrary, it must be such a comment as can operate to the prejudice of the party assigning it; the rule being that the error complained of, to work reversal, must be in its nature prejudicial. *Miller v. Dumon,* 24 Wash. 648, 64 Pac. 804; *State v. Manderville,* 37 Wash. 365, 79 Pac. 977; *State v. Roberts,* 91 Wash. 560, 158 Pac. 101. In this instance the objectionable comment is in its nature prejudicial; the court commended to the jury the credibility of the witness, who was testifying to matters of fact which were directly at issue.

The fourth and final assignment relates to the instruction of the court to the jury on the question of reasonable doubt. As a part of its instruction on the particular question, the court gave the following:

"A reasonable doubt is such a doubt as exists in the mind of a reasonable man after he has fully, fairly and carefully compared and considered all of the evidence introduced on the trial. If, after a careful consideration and comparison of all of the evidence, you can say you have an abiding conviction of the truth of the charge, you are satisfied beyond a reasonable doubt."

At the conclusion of the charge, the defendant requested the court to give an instruction to the effect that a reasonable doubt could arise from a lack of evidence as well as from the evidence given to the jury. The request was refused, and we do not find that it was covered elsewhere in the instructions. The requested instruction should have been given. It announced a correct principle of law which the defendant was entitled to have brought to the attention of the jury.

For the errors indicated, the judgment is reversed and a new trial awarded.

HOLCOMB, C. J., MOUNT, MITCHELL, and BRIDGES, JJ., concur.