[No. 39644.    En Banc.    November 21, 1968.]

THE STATE OF WASHINGTON, *Respondent*, v. MARTHA KAYE
LAMPSHIRE, *Appellant*.*

*Reported in 447 P.2d 727.

*Charles T. Morbeck* and *Eugene G. Schuster,* for appellant (appointed counsel for appeal).

*Herbert H. Davis* and *Carl G. Sonderman,* for respondent.

HUNTER, J.—The defendant (appellant), Martha K. Lampshire, appeals from a judgment and sentence entered on a jury verdict finding her guilty of five counts of the crime of carnal knowledge.

The defendant is a woman in her early twenties. She is the mother of two children and was expecting a third at the time of the trial. In her early teens she ran away from home and as a result was placed in a correctional institution. Thereafter, she was committed to Western State Hospital for a period of time. In 1962, she married Glen Greger, and secured a divorce from him in 1964. She and her present husband, Jack Lampshire, were married in 1964 after the divorce from Greger. Of this marriage, a son, Steve, was born, who was 2 years old at the time of trial. Jack Lampshire is an enlisted man in the Air Force and was sent to Vietnam in 1966. The defendant and her children moved in with a longtime family friend, Bob Hanneman, who occupied a 2-bedroom house in Richland, Washington. About December 27, 1966, Hanneman moved to another house in West Richland, and the defendant and her children accompanied him. It was at these two residences of Hanneman that the alleged crimes of the defendant took place.

The defendant was first arrested on January 5, 1967, on a charge of carnal knowledge. Subsequently she was charged on five separate counts with violating RCW 9.79.020, which as pertinent to this case reads:

> Carnal knowledge—Penalties. Every male person who shall carnally know and abuse any female child under

the age of eighteen years, not his wife, and every female person who shall have sexual intercourse with any male child under the age of eighteen years, not her husband, shall be punished as follows:

. . . .

(3) When such act is committed upon a child of fifteen years of age and under eighteen years of age, by imprisonment in the state penitentiary for not more than fifteen years.

At the trial the prosecution produced three juveniles, 17, 17 and 16 years of age, respectively, who testified that they had had intercourse with the defendant at the Richland and West Richland residences of Hanneman during the months of December, 1966 and January, 1967. Each of the prosecuting witnesses was, at the time of trial, in the custody of juvenile authorities for various offenses. One juvenile testified that he had been committed by the juvenile authorities to the Spruce Canyon Youth Forestry Camp for having intercourse with the defendant. A fourth state's witness, a 16-year-old boy, testified that he had seen the defendant and one of the prosecuting witnesses on the same bed on one occasion, and that, although it was dark, he heard hard breathing and saw body movement.

The defendant has consistently denied that she had intercourse with any of the prosecuting witnesses. Both her brother, who frequented Hanneman's residences, and Hanneman himself testified that she had not, to their knowledge, had intercourse with any of the prosecuting witnesses.

The jury returned a verdict of guilty on all five counts, and judgment and sentences were entered accordingly. The defendant was sentenced to a maximum term of 15 years on each count, the sentences to run concurrently. From this judgment and sentence the appeal was taken.

It is significant, for the purposes of this appeal, that the prosecution's case turned almost entirely on the evidence of the three prosecuting witnesses and the 16-year-old boy. No physical evidence was introduced. In order to return its verdict the jury had to believe the prosecuting witnesses

instead of the defendant and her witnesses. The question before the jury was solely one of the credibility of the witnesses.

The defendant's first contention is that the trial court erred when it refused to permit the defendant to cross-examine one of the prosecuting witnesses as to prior acts of unchastity. The defendant argues that such questions were appropriate in order to show that the veracity of this witness was questionable, and therefore, that the trial court abused its discretion in foreclosing this line of inquiry. Also, it is suggested that we apply a rule in this case different from the one evolved in the many previous cases brought under this statute where the prosecuting witnesses have been female, since there is less reason to protect the reputation of a male prosecuting witness than the reputation of a female prosecuting witness.

We believe that the same rule should apply to all prosecuting witnesses, male or female. It is within the discretion of the trial court as to whether evidence concerning specific acts of sexual misconduct will be received in order to impeach the credibility of such a witness. *State v. Brown*, 68 Wn.2d 852, 416 P.2d 344 (1966); *State v. Wolf*, 40 Wn.2d 648, 245 P.2d 1009 (1952). We do not find that the trial court manifestly abused its discretion in foreclosing further inquiry into specific acts of misconduct of the prosecuting witness in this instance.

The defendant next assigns error to a remark made by the trial judge during the direct examination of the defendant. The record shows that, after an objection to the materiality of the testimony by the prosecution, the judge stated, in the presence of the jury:

> Counsel's objection is well taken. We have been from bowel obstruction to sister Betsy, and I don't see the materiality, counsel.

The defendant contends this was a comment on the evidence, contrary to Const. art. 4, § 16. We must agree. As we said in *Heitfeld v. Benevolent & Protective Order of Keglers*, 36 Wn.2d 685, 699, 220 P.2d 655, 18 A.L.R.2d 983

(1950), the purpose of article 4, section 16 of the Washington constitution, "is to prevent the jury from being influenced by knowledge conveyed to it by the court as to the court's opinion of the evidence submitted."

The record shows that the trial judge allowed wide latitude in the examination of the defendant. The defendant testified concerning the bowel condition of her 6-year-old daughter, and also about a visit she and her sister Betsy had made to their mother in Colorado.

■ We are satisfied that the remark of the trial judge was made inadvertently in ruling on the motion. Nevertheless, the remark implicitly conveyed to the jury his personal opinion concerning the worth of the defendant's testimony. Consequently, the burden rests on the state to show that no prejudice resulted to the defendant unless it affirmatively appears from the record that no prejudice could have resulted from the court's comment. *State v. Bogner,* 62 Wn.2d 247, 382 P.2d 254 (1963).

In the instant case the record affirmatively shows that the court's comment was prejudicial, since it undermined the credibility of the defendant's testimony, and there is an absence of any showing to the contrary. Therefore, we hold that prejudicial error has been committed.

The state argues that the trial court was merely giving its reasons for a ruling on the evidence, and that, if the remark was error, the error was cured by the court's subsequent oral instruction to the jury to disregard comments of court and counsel. We disagree. Under the facts here, the damage was done when the remark was made and it was not capable of being cured by a subsequent instruction to disregard. See *State v. Jackson,* 83 Wash. 514, 145 Pac. 470 (1915).

■ The state further argues that error may not be predicated upon the trial court's remark because the defendant failed to object to it at the time it was made, or to request a curative instruction, citing *State v. Kelsey,* 46 Wn.2d 617, 283 P.2d 982 (1955). However, that case held, in accordance with the usual rule, that an error not raised at

trial is not subject to review. The opinion did not consider the established exception to that rule, that an error need not be raised at trial in order to secure review if it amounts to an invasion of a constitutional right. *State v. Warwick*, 105 Wash. 634, 637, 178 Pac. 977 (1919); *State v. Jackson*, *supra*, at 525; *State v. Crotts*, 22 Wash. 245, 60 Pac. 403 (1900). Since a comment on the evidence violates a constitutional prohibition, the defendant's failure to object or move for a mistrial does not foreclose her from raising this issue on appeal.

The defendant next contends that the trial court erred in overruling her objection when the prosecutor, on cross-examination, inquired concerning a sizeable phone bill she had incurred. It is argued that this subject was beyond the scope of direct examination, and that the purpose of embarking on it was to attack the character and credibility of the defendant. The prosecutor's question raised the inference that the phone bill totaled $3,000.

■ It is a recognized rule, for which authorities need not be cited, that cross-examination is limited to the scope of the direct examination, and that the trial court is endowed with discretion in determining the latitude of cross-examination. In this case, the trial court manifestly abused its discretion in permitting the prosecutor to cross-examine the defendant in regard to the phone bill, which was highly prejudicial to the character and credibility of the defendant. The matter of a large phone bill owed by the defendant, which was entirely a collateral question, was not raised on direct examination. Although the defendant did refer on direct examination to a phone bill incurred by one of the prosecuting witnesses, this statement did not open the way for the state to inquire into the defendant's own phone bill. Also, the rule is well established that witnesses may not be impeached by means of evidence of prior acts of misconduct. *State v. Emmanuel*, 42 Wn.2d 1, 253 P.2d 386 (1953); *State v. Belknap*, 44 Wash. 605, 87 Pac. 934 (1906).

The state further argues that the initial mention of her phone bill was volunteered by the defendant on cross-ex-

amination, and that the subject was for that reason opened to the prosecution's questions. The record shows, however, that the defendant's counsel raised a timely objection to the testimony was the vital issue, that admitting the above the direct examination and immaterial and collateral, as well as prejudicial. The trial court erred in overruling the objection and allowing the questioning to continue.

The defendant's final assignment of error is to the trial court permitting the prosecution to put on two witnesses in rebuttal when their testimony was merely cumulative and repetitious of evidence previously introduced.

In *Roche Fruit Co. v. Northern Pac. Ry.*, 184 Wash. 695, 52 P.2d 325 (1935), we said at 698-9:

> Rebuttal evidence, generally speaking, is receivable only where new matter has been developed by the evidence of one of the parties and is ordinarily limited to a reply to new points.

The exclusion of such evidence is a matter within the discretion of the trial court. *State v. Mays,* 65 Wn.2d 58, 395 P.2d 758 (1964); *Roche Fruit Co. v. Northern Pac. Ry., supra.* We believe in this case, where the credibility of testimony was the vital issue, that admitting the above testimony on rebuttal overemphasized the testimony of these witnesses. Thus, it was error for the trial court to overrule the defendant's objections to the rebuttal testimony of these witnesses.

We are convinced that the cumulative effect of the cited errors was to deprive the defendant of a fair trial, particularly in a case such as this where the result hinged upon the jury's belief of the testimony of the witnesses. See *State v. Swenson,* 62 Wn.2d 259, 382 P.2d 614 (1963). The judgment is therefore reversed and the cause is remanded for a new trial.

FINLEY, C. J., ROSELLINI and HALE, JJ., concur.

McGOVERN, J., concurs in the result.

HILL, J. (dissenting)—I dissent. The majority urges that "no physical evidence was introduced. In order to return its

verdict the jury had to believe the prosecuting witnesses instead of the defendant and her witnesses." This is, after all, not an unusual situation in a criminal case. The jury having believed the state's witnesses, it is not our function, on review, to set aside its factual decision for no better reason than the collection of trial trivia on which the majority relies.

I shall discuss each of the three minor incidents which the majority has attempted to magnify into grievous error prejudicial to the defendant:

1. *The trial court's statement*:

> Counsel's objection is well taken. We have been from bowel obstruction to sister Betsy, and I don't see the materiality, counsel.

To place this incident in its proper context requires a short explanation. The prosecution had just made its second objection to the materiality of the defendant's lengthy, rambling, and completely irrelevant account of her life history beginning at age 3 and proceeding, with many digressions, up to a time some months before her move from Colorado Springs to Richland, Washington, where the alleged commission of the criminal acts occurred. After the objection, the court made the above-quoted statement, whereupon the defendant's counsel answered:

> Well, Your Honor, I think we have a right to show the circumstances of this girl's life, and we are just about up to date, Your Honor. I don't think it will be any more tedious—as I say we are about up to date. May I continue?

To which the court replied, "Well proceed." And proceed he did.

Apparently counsel at that time did not regard the court's statement as a prejudicial comment on the evidence, but as an explanation of why the court thought the objection should be sustained. Counsel, by his reply, persuaded the court to let the personal historical narration continue. It is only on appeal that the court's statement blossoms into a violation of the constitution and a prejudicial comment on the evidence.

The court, in construing article 4, section 16, of the state constitution,[1] recently said:

In *Blackburn v. Groce,* 46 Wn.2d 529, 536, 283 P.2d 115 (1955), we noted that it was stated relative to article 4, section 16:

All comment is prohibited, but it does not follow that every comment constitutes grounds for a mistrial or that a new trial will be granted in consequence thereof. The test is, Was the party complaining of the comment prejudiced thereby? *Heitfeld v. B.P.O.K.* (1950), 36 Wn. (2d) 685, 220 P. (2d) 655, 18 A.L.R. (2d) 983; *State v. Herwitz* (1919), 109 Wash. 153, 186 Pac. 290.

In the present case the comment fails the test. The court's comment unmistakably refers to the colloquy between the court and counsel on a collateral matter, and did not relate in any way to what appellant terms the "evasions and inconsistencies" of the witness McGuinness. We cannot but conclude that appellant was not prejudiced by the court's remark, and the assignment of error is without merit. See *Blackburn v. Groce, supra.* (*State v. Haye,* 72 Wn.2d 461, 475-76, 433 P.2d 884 (1967))

A court cannot rule on the admissibility of evidence without, in a sense, commenting thereon. If, in the present case, the court had merely said "Objection sustained," it would have indicated its view that the testimony being given was not material. From such a ruling, terminating the matter, there could be no basis for an appeal. But because the court explained why it felt the testimony being elicited was not material, defense counsel had the opportunity to persuade the court to let him continue on the same course. Within a matter of minutes another objection to the relevancy of the testimony being given was made. The court then said:

Sustained. I see no relevancy. At this time I want to caution the jury that there have been three exchanges between counsel, and comments about evidence, none of which with any desire on counsel's part to mislead you or desire on the part of the Court to comment on the evidence. You will notice as you go through jury service

---

[1] "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." Const. art. 4, § 16.

that we have to rule on objections of counsel from time to time, and you are not to consider the comments of counsel or the Court, and you are to totally disregard the comments of Court and counsel concerning such objections.

In the *Heitfeld* case, cited in the quotation from *State v. Haye, supra,* we pointed out,

[T]hat remarks addressed entirely to attorneys, in ruling upon questions presented during the progress of the trial, are not comments on the evidence prohibited by the constitution. (*Heitfeld v. B.P.O.K.,* 36 Wn.2d 685, 706, 220 P.2d 655, 18 A.L.R.2d 983 (1950))

In the light of the circumstances and the court's explanatory instruction, it is clutching at straws to argue that the claimed comment was in any way prejudicial to the defendant, or violative of her rights under our state constitution.

2. *The trial court's permitting cross-examination of the defendant concerning a telephone bill.*

This is more straw clutching. As the trial court pointed out, the defendant had opened up the matter of the telephone bill on her own direct examination by accusing one of the prosecuting witnesses of making several 'phone calls to a girl in Utah and charging them to Mr. Hanneman's telephone[2] without permission. This was apparently intended to show the depraved character of the prosecuting witness.

On defendant's cross-examination, it developed that there was a large telephone bill resulting primarily from calls to and from her friends, the Quinn family, in England. She testified:

They had called and I had called them, and we talked back and forth. We made arrangements with a finance company to pay the bill. It got a little higher than we estimated it to be.

---

[2]Robert L. Hanneman, sometimes referred to as "Uncle Bob," rented the house in which the defendant was living and where the violations being prosecuted in this case were alleged to have occurred. He testified that the telephone was in her name. When asked if the telephone was in Mr. Hanneman's name, she replied, "I wouldn't know. I know I have a phone bill over there that we are paying for."

She was asked how much that telephone bill was, and she said, "About $800, I guess. If it is any more, then it will be taken care of." The prosecuting attorney then asked: "Could it be in the neighborhood of $3,000?" Her reply was, "No, it couldn't. If it is, it sure got awful high."

As the trial court pointed out, the lengthy irrelevant direct examination may have resulted in some irrelevant cross-examination. The gist of the matter is that any telephone bill the defendant may have contracted was being taken care of. That seems to be entirely creditable to the defendant, not something that could prejudice the jury against her.

3. *Permitting two rebuttal witnesses to give testimony that was merely cumulative and repetitious.*

The cases cited by appellant represented situations where we approved the exclusion of cumulative or repetitious testimony. Appellant cites no case, nor does the majority, where a new trial was ever granted because of the admission of such testimony. The testimony of the two rebuttal witnesses in this case is compressed within three pages in the statement of facts, and almost half of the three pages is made up of objections and colloquy.

The rebuttal had nothing to do with the offenses charged or any similar offenses. It was neither cumulative nor repetitious, but had to do with the contradiction of defense witnesses on collateral matters that were not particularly important. I have made a short resume of the rebuttal testimony.

The offenses charged occurred during December, 1966 and January, 1967, and in two different houses occupied by Mr. Hanneman—one in Richland, the other in West Richland. Mr. Hanneman had testified that Paul Wooten (one of the boys involved) had never lived in the Richland house; the appellant had testified that she drank only an "occasional beer." When Paul Wooten was called on rebuttal he testified that he had lived in the Richland house 5 days before the move to West Richland and, further, that the appellant drank from 6 to 12 beers a day.

The appellant testified that she had never seen Paul Davis (another of the boys involved) but twice. He was called on rebuttal and testified that he was at Mr. Hanneman's house when the appellant was there 10 or 15 times and stayed overnight on 4 or 5 of those occasions.

This was the extent of the rebuttal. It might well have been excluded, but it is a far cry from prejudicial error.

My conclusion is that no one, or no combination of these three incidents, prejudiced the substantial rights of the appellant. In *State v. Britton,* 27 Wn.2d 336, 341, 178 P.2d 341 (1947), we discussed at some length the distinction between harmless and prejudicial error, saying:

> A harmless error is an error which is trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case. Rem. Rev. Stat., § 307 [P.P.C. § 84-13],[3] provides:
>
> "The court shall, in every stage of an action, disregard any error or defect in pleadings or proceedings which shall not affect the substantial rights of the adverse party, and no judgment shall be reversed or affected by reason of such error or defect."
>
> A prejudicial error is an error which affected the final result of the case and was prejudicial to a substantial right of the party assigning it. 3 Am. Jur. 555, § 1003,[4] states:
>
> "It is a fundamental rule of modern appellate procedure that in order to warrant a reversal, the error complained of must have been prejudicial to the substantial rights of the appellant or plaintiff in error."
>
> A common test to determine whether an error was harmless or prejudicial, is found in 3 Am. Jur. 563, § 1007:[5]
>
> "One very common test which is applied in a variety of situations is whether or not the error affected the result. If it did not, then it is not reversible error.
>
> "For the purpose of determining whether or not the appellant has been injured, it is proper to look to the whole record, and not to that part only which precedes

---

[3]Now RCW 4.36.240.

[4]See 5 Am. Jur. 2d 218, § 776.

[5]See 5 Am. Jur. 2d 225, § 783.

and includes the particular exception under consideration."

Such an aggregation of minuscule errors (if they were errors) as we have here, would normally receive short shrift as the basis for a reversal of conviction based on a jury verdict where the only issue was which witnesses the jury was going to believe. This case does, however, represent an unusual application of the carnal knowledge statute. It seems to me that the majority, because it disagrees with the use made of that statute in the present case, has dignified this collection of trivia as prejudicial error.

Personally, I am not happy with the use which is here made of that statute, but I am satisfied that the law is applicable to the present situation and that there was no prejudicial error in the trial. If a change is to be made it should be by the legislature, not by judicial disapproval. Therefore, I would affirm.

WEAVER, HAMILTON, and NEILL, JJ., concur with HILL, J.

January 24, 1969. Petition for rehearing denied.