# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73532-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| LAVONDA SUE BECK, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: July 25, 2016 |
| | ) | |

2016 JUL 25 AM 10: 18

COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

Cox, J. – Lavonda Beck appeals, arguing that the trial judge's nonverbal communication constituted an unconstitutional comment on the evidence. For the first time on appeal, Beck contends that the statutes imposing the mandatory DNA collection fee and mandatory Victim Penalty Assessment (VPA) violate substantive due process. She also argues that the trial court abused its discretion by imposing the DNA collection fee and that her counsel was ineffective for failing to object to the imposition of the fee. Lastly, Beck argues that the trial court failed to determine whether Beck had the ability to pay the DNA collection fee and VPA.

We assume, without deciding, that the nonverbal communications of the trial judge were comments on the evidence. Nevertheless, this record shows no prejudice to Beck could have resulted. Beck's substantive due process challenges to the DNA collection fee and VPA statutes are neither ripe for review nor manifest constitutional errors under RAP 2.5(a)(3). Beck's counsel's

performance did not fall "below an objective standard of reasonableness."[1] Thus, counsel was not ineffective. Lastly, the trial court was not required to inquire into Beck's ability to pay the DNA collection fee and VPA because these legal financial obligations are mandatory. We affirm.

Barbara and Paul Hanson employed Beck as a caretaker, and Beck moved into the Hansons' home. The Hansons later noticed that some of their property was missing, which the police later discovered at pawn shops.

The State charged Beck with three counts of first degree trafficking in stolen property. A jury found Beck guilty as charged, and the trial court entered its judgment and sentence on the verdicts. The sentence requires Beck to pay the $500 mandatory VPA and the $100 mandatory DNA collection fee.

Beck appeals.

## COMMENT ON THE EVIDENCE

Beck argues that the trial judge's nonverbal actions constituted an improper comment on the evidence. Assuming, without deciding, this is true, we hold that this record shows no prejudice could have resulted.

Article IV, section 16 of Washington's constitution prohibits judges from conveying their "'personal attitudes toward the merits of the case.'"[2] This provision prevents the court's opinion of submitted evidence from influencing the

---

[1] Strickland v. Washington, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[2] State v. Higgins, 168 Wn. App. 845, 859, 278 P.3d 693 (2012) (quoting State v. Becker, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)).

2

jury.[3] A trial judge violates this provision if the judge's words or actions convey his or her personal feelings.[4] We review the facts and circumstances of each case when determining whether a trial judge's conduct constituted a comment on the evidence.[5]

A trial judge violates article IV, section 16 by commenting on a witness's credibility.[6] A judge may question witnesses and ask clarifying questions, but the judge's attitude toward the case's merits must not appear reasonably inferable from the nature or manner of the judge's statements.[7] The trial court errs when it communicates to the jury its feelings as to the truth value of a witness's testimony.[8]

We presume that judicial comments are prejudicial.[9] The State bears the burden of showing that the defendant was not prejudiced, "'unless the record affirmatively shows that no prejudice could have resulted.'"[10]

Here, during the State's cross-examination of Beck, she testified about certain property she claimed the Hansons gave her, when she received the

---

[3] State v. Miller, 179 Wn. App. 91, 107, 316 P.3d 1143 (2014).

[4] Higgins, 168 Wn. App. at 859.

[5] State v. Francisco, 148 Wn. App. 168, 179, 199 P.3d 478 (2009).

[6] State v. Sivins, 138 Wn. App. 52, 59, 155 P.3d 982 (2007).

[7] State v. Eisner, 95 Wn.2d 458, 463, 626 P.2d 10 (1981).

[8] Francisco, 148 Wn. App. at 179.

[9] State v. Brush, 183 Wn.2d 550, 559, 353 P.3d 213 (2015).

[10] Id. (quoting State v. Levy, 156 Wn.2d 709, 723, 132 P.3d 1076 (2006)).

property, and when she pawned certain of these items. The trial judge asked for clarification as to when certain events occurred. The judge stated, "I'm sorry, I'm going to interrupt. Is there a year for some of these things?"[11]

After Beck responded, the State resumed questioning. Beck's counsel then objected to the trial judge's "facial comments."[12] The trial judge noted the objection, and counsel objected again "to any facial comments."[13] The State resumed its questioning to clarify the timing of events.

During recess and outside the jury's presence, counsel for Beck made a further record:

> [COUNSEL]: Your Honor, with due respect I don't think it was appropriate to make facial comments when the court was clarifying a question of Ms. Beck. The court raised its hand and Your Honor shook your head back and forth. And I'm concerned it sends a message to the jury that you as a judge may not believe or have questions about her credibility. I'm not saying that's what happened, but I am concerned about those perceptions and that's why I objected. And I don't mean to insult the court. I am just—
>
> THE COURT: No, that's okay. You need to make that objection if you feel it's appropriate. And I don't recall waving my hand. But you're an officer of the court and you say that, then I'm sure that that's what you saw. And—and I will instruct the jury again that if they perceive that I have made a comment that they are not to consider any comment that I have made.[14]

The jury did not return, and court was adjourned.

---

[11] Report of Proceedings (April 14, 2015) at 404.

[12] Id.

[13] Id.

[14] Id. at 407-08.

4

The next day, the trial court read the jury instructions before closing arguments. Counsel for Beck did not request further relief from the trial court by requesting any curative instruction or otherwise. But counsel made a further record that day by filing a declaration regarding the incident, stating that the trial judge shook her head and "put her hand up" when questioning Beck. Counsel also stated that the judge "had an inquisitive and confused look on her face."

On this record, it is impossible for this court to review whether these nonverbal actions violated the constitutional prohibition against a judge commenting on the evidence. Nevertheless, we assume, without deciding, that they did. Thus, the question is whether this record shows no prejudice to Beck could have occurred.

We conclude that this record shows no such prejudice could have occurred. The court twice orally instructed the jury to disregard any expression of personal opinion of the judge about testimony or witness "value." The first was prior to opening statements. The second was when the court read its jury instructions at the close of the case. These written instructions included the general instruction that includes the admonishment to disregard any comments on the evidence by the judge. We presume that jurors follow the court's instructions.[15] Notably, counsel for Beck did not request any further relief by way of a curative instruction or otherwise for the alleged comments on the evidence.

---

[15] State v. Allen, 182 Wn.2d 364, 380, 341 P.3d 268 (2015).

In State v. Elmore, the supreme court approved the use of instructions to cure a judicial comment on the evidence.[16] Similar instructions were twice given in this case.

Beck relies on State v. Lampshire[17] to argue that instructing the jury to disregard the judge's comment would not cure the resulting prejudice. That case is distinguishable.

In that case, during Martha Lampshire's direct examination, the State objected to the materiality of Lampshire's testimony.[18] The trial judge then stated "Counsel's objection is well taken. We have been from bowel obstruction to sister Betsy, and *I don't see the materiality*, counsel."[19]

On appeal, the State argued that the trial court's subsequent instruction to the jury to disregard this comment on the evidence cured any error from the trial judge's comment. The supreme court disagreed.

The supreme court stated that "the trial judge allowed wide latitude" in Lampshire's examination.[20] Specifically, the record showed that Lampshire testified about her daughter's bowel condition and about visiting her mother in another state.[21] The supreme court then determined that the trial judge's remark

---

[16] 139 Wn.2d 250, 276, 985 P.2d 289 (1999).

[17] 74 Wn.2d 888, 447 P.2d 727 (1968).

[18] Id. at 891.

[19] Id.

[20] Id. at 892.

[21] Id.

6

"implicitly conveyed to the jury his personal opinion concerning the worth of the defendant's testimony" and "undermined" the testimony's credibility.[22] According to the supreme court, the comment was not capable of later correction by instruction.

Here, the trial judge did not explicitly state an opinion on the materiality of Beck's testimony. Beck's claim that the trial judge's nonverbal comments did so is a claim we cannot review on this record.

In this case, however, the court twice instructed the jury to disregard any remarks that could be construed as comments on the evidence. And this admonishment was contained in the written instructions that went to the jury room. It is noteworthy that counsel for Beck did not request any further relief after making a record of objections to the nonverbal actions of the trial judge. Accordingly, we conclude that this record shows that Beck could not have been prejudiced by the trial judge's nonverbal actions.

## LEGAL FINANCIAL OBLIGATIONS

Beck argues that, as applied to an indigent defendant, the DNA collection fee and the VPA statutes violate substantive due process. She also argues that she may raise her substantive due process claim for the first time on appeal as a manifest constitutional error under RAP 2.5. Because we recently rejected similar arguments in State v. Shelton,[23] we do so here.

---

[22] Id.

[23] No. 72848-2, slip op. at 7-13 (Wash. Ct. App. June 20, 2016).

7

In that case, the trial court ordered Michael Shelton to pay the $500 mandatory victim penalty assessment and the $100 mandatory DNA fee.[24] For the first time on appeal, Shelton argued that as applied to an indigent defendant, the DNA collection fee statute violates substantive due process.[25]

This court held that Shelton's substantive due process challenge to the DNA fee statute was not ripe for review because the State did not seek "to enforce collection of the DNA fee or impose sanctions for failure to pay the DNA fee."[26]

This court also held that Shelton's claim was not a manifest constitutional error, stating "'[i]f the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest.'"[27] The record "contain[ed] no information about [Shelton's] future ability to pay the mandatory $100 DNA fee."[28] Thus, Shelton could not show that his claim was a manifest constitutional error under RAP 2.5(a)(3) "[u]ntil the State seeks to enforce collection of the DNA fee or impose a sanction for failure to pay."[29]

---

[24] Id. at 1.

[25] Id. at 3.

[26] Id. at 5.

[27] Id. at 7 (quoting State v. McFarland, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995)).

[28] Id.

[29] Id.

Although Shelton addressed only the DNA fee, its reasoning also applies to the VPA. Both the VPA and DNA collection fee are mandatory legal financial obligations. And Beck does not argue that these mandatory legal financial obligations should be analyzed differently.

Shelton controls this case. Here, as in Shelton, the record does not indicate that the State seeks to enforce collection of the DNA collection fee or VPA or to impose sanctions for failure to pay. And Beck does not argue otherwise. Thus, Beck's as-applied substantive due process challenge to the statutes is not ripe for review.

The record does not contain sufficient information about Beck's future ability to pay the mandatory $100 DNA collection fee and the mandatory $500 VPA. The record on appeal shows that Beck received social security disability income, but the record does not contain the amount of this income. Additionally, the record does not show Beck's assets or debts. Thus, "'the facts necessary to adjudicate the claimed error are not in the record on appeal.'"[30] Accordingly, Beck fails to show actual prejudice, and her claimed error is not manifest. Consequently, we decline to further address this claim raised for the first time on appeal.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Beck argues that she received ineffective assistance of counsel when her counsel failed to inform the trial court of RCW 9.94A.777, which governs the

---

[30] Id. (quoting McFarland, 127 Wn.2d at 333).

imposition of certain legal financial obligations upon defendants suffering from mental health conditions. We disagree.

Both the federal and state constitutions provide the right to counsel.[31] The right to counsel includes the right to effective assistance of counsel.[32] Ineffective assistance of counsel "is an issue of constitutional magnitude that may be considered for the first time on appeal."[33]

To establish an ineffective assistance claim, the defendant must first show that counsel's performance was deficient.[34] This requirement involves showing that counsel's performance "fell below an objective standard of reasonableness."[35] Judicial scrutiny of counsel's performance is "highly deferential."[36] We make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[37]

---

[31] U.S. CONST. amend. VI; CONST. art. I, § 22.

[32] Strickland, 466 U.S. at 686; State v. Crawford, 159 Wn.2d 86, 97, 147 P.3d 1288 (2006).

[33] State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

[34] Strickland, 466 U.S. at 687.

[35] Id. at 688.

[36] Id. at 689.

[37] Id.

Second, the defendant must show that the deficient performance prejudiced the defense.[38] Prejudice is defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[39] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[40]

We review de novo whether a defendant received ineffective assistance of counsel.[41]

Here, Beck argues that her counsel's performance was deficient because he failed to inform the trial court of RCW 9.94A.777. That statute provides:

> (1) Before imposing any legal financial obligations upon a defendant who suffers from a mental health condition, other than restitution or the victim penalty assessment under RCW 7.68.035, a judge must first determine that the defendant, under the terms of this section, has the means to pay such additional sums.
>
> (2) For the purposes of this section, a defendant suffers from a mental health condition when the defendant has been diagnosed with a mental disorder that prevents the defendant from participating in gainful employment, as evidenced by a determination of mental disability as the basis for the defendant's enrollment in a public assistance program, a record of involuntary hospitalization, or by competent expert evaluation.

---

[38] Id. at 687.

[39] Id. at 694.

[40] Id.

[41] State v. Maynard, 183 Wn.2d 253, 259, 351 P.3d 159 (2015).

Beck's counsel's performance did not fall "below an objective standard of reasonableness."[42] Specifically, her counsel's decision to not inform the trial court of RCW 9.94A.777 was not unreasonable.

Counsel could have reasonably believed that RCW 9.94A.777 did not apply. Although the record shows that Beck received social security disability income, the record does not show that Beck receives social security disability income solely due to a mental health condition. Further, Beck testified about her past and recent employment history. She also described her extensive caretaker responsibilities to the Hansons and testified that she "can work with a disability." Thus, although Beck received social security disability income, the record does not show that she suffered from a mental health condition that prevented her "from participating in gainful employment."[43] Accordingly, the record does not show that RCW 9.94A.777 applied, and counsel's performance was not deficient.

Because Beck fails to show the presence of the first prong of her claim, we need not address the second prong, prejudice.

## MANDATORY LEGAL FINANCIAL OBLIGATION & ABILITY TO PAY

Beck argues that the trial court failed to recognize that the DNA collection fee was not mandatory under RCW 9.94A.777. Beck also argues that the trial court abused its discretion by imposing the DNA collection fee and VPA without inquiring into Beck's ability to pay.

---

[42] Strickland, 466 U.S. at 688.

[43] RCW 9.94A.777(2).

Beck raises these arguments for the first time on appeal. And as stated above, the record does not show that RCW 9.94A.777 applied. Thus, the mandatory DNA collection fee statute, RCW 43.43.7541, applied. Further, trial courts must impose the DNA collection fee and VPA "irrespective of the defendant's ability to pay."[44] Accordingly, we reject these arguments.

We affirm the judgment and sentence.

_Cox, J._

WE CONCUR:

_____

_Trickey, J_

---

[44] State v. Lundy, 176 Wn. App. 96, 102, 308 P.3d 755 (2013).