[No. 47100–2.   En Banc.   April 2, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. AUGUST JOSEPH EISNER, *Petitioner.*

*Joseph R. Schneider* (of *Sensney, Davis, McCormick & Schneider*), for petitioner.

*Curtis Ludwig, Prosecuting Attorney,* and *Ray Whitlow, Deputy,* for respondent.

DOLLIVER, J.—Defendant was charged with first degree statutory rape of his niece, A.A. There were no witnesses and Eisner denied the charge. The State's case was therefore dependent upon the testimony of A., who was 5 years old at the time of trial and 4 at the time of the alleged rape. Defendant's defense was largely dependent upon his own testimony.

On October 6, 1978, a pretrial competency hearing was held. Both the prosecutor and defense counsel were permitted to ask questions. At the end of the hearing, A. was adjudged competent to testify.

At the jury trial when A. testified, the court first questioned her to put her at ease and determine her ability to recall and tell the truth. The prosecutor then questioned her at length. She testified defendant had touched her vaginal area and "teached me about sex." Even after repeated attempts by the prosecutor, however, A. did not testify to acts sufficient to support a first degree rape conviction. She would speak only of ."other stuff" and "what I told you guys about." She ended the direct examination by declaring she had truthfully told everything that had happened.

After direct examination, the court invited the prosecutor to ask A. leading questions. He declined. Cross–examination followed with no redirect.

After the cross–examination, the court questioned A. and was able to elicit a description of acts sufficient to prove the

State's case. Immediately after the judge's examination, the court recessed. The recess was 40 minutes earlier than usual. Next morning, with no further questions or remarks, the State rested.

Appellant was convicted of first degree statutory rape. In an unpublished split decision, the Court of Appeals affirmed. We granted defendant's petition for review and reverse the trial court and the Court of Appeals.

Following the prosecutor's inability to get A. to describe the "other stuff" the trial court took over the questioning as follows:

THE COURT: [A.], when you were over at your Uncle Joe's that night—

THE WITNESS: Yes.

THE COURT: I asked you this before. Did you touch any part of his body?

THE WITNESS: No.

THE COURT: No? Didn't touch anything?

THE WITNESS: No.

THE COURT: Did he put anything in your mouth?

THE WITNESS: Yeah.

THE COURT: What?

THE WITNESS: I don't know. I can't remember.

THE COURT: Was it part of his body or not? Do you know what I mean by part of the body?

THE WITNESS: No, but I don't know if it was part of his body.

THE COURT: What do you call the thing on your dolly where you said he touched you?

THE WITNESS: I don't know.

THE COURT: Do you have a word for it?

THE WITNESS: Yeah.

THE COURT: What is it?

THE WITNESS: It's silly.

THE COURT: What is it?

THE WITNESS: Silly.

THE COURT: I can't hear you.

THE WITNESS: Silly.

THE COURT: Silly?

THE WITNESS: Silly.

THE COURT: What is that thing down there on your dolly that you said he touched?

THE WITNESS: The what?

THE COURT: The part of your dolly you said he touched.

THE WITNESS: I don't know.

THE COURT: When you go to the potty, do you know where the wee–wee comes out? Do you know what that means?

THE WITNESS: Yeah.

THE COURT: Is that what he touched?

THE WITNESS: Yeah.

THE COURT: Do you know what part of his body that— the wee–wee comes out of?

THE WITNESS: Yeah.

THE COURT: What do you call that?

THE WITNESS: His pee–pee.

THE COURT: Did he do anything with that?

THE WITNESS: Yeah.

THE COURT: What?

THE WITNESS: Stick it in my mouth.

THE COURT: How many times?

THE WITNESS: Only one.

THE COURT: What did he say?

THE WITNESS: "Close your eyes," but I peeked a little.

THE COURT: What did you see?

THE WITNESS: Nothing.

THE COURT: Anything come out of it?

THE WITNESS: Yes.

THE COURT: What?

THE WITNESS: Everything.

THE COURT: What? What did it look like?

THE WITNESS: Yellow.

THE COURT: What happened to it?

THE WITNESS: He put it all in my mouth.

THE COURT: We will take a recess.

Const. art. 4, § 16 concerns charging juries, and reads:

Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law.

■■ Although article 4, section 16 appears on its face to be concerned only with the giving of jury instructions, its object has been held to be "to prevent the jury from being influenced by knowledge conveyed to it by the court of what the court's opinion is on the testimony submitted."

*State v. Crotts,* 22 Wash. 245, 250, 60 P. 403 (1900). *State v. Jackson,* 83 Wash. 514, 523–24, 145 P. 470 (1915), stated:

Every lawyer who has ever tried a case, and every judge who has ever presided at a trial, knows that jurors are inclined to regard the lawyers engaged in the trial as partisans, and are quick to attend an interruption by the judge, to which they may attach an importance and a meaning in no way intended. It is the working of human nature of which all men who have had any experience in the trial of cases may take notice. Between the contrary winds of advocacy, a juror would not be a man if he did not, in some of the distractions of mind which attend a hard fought and doubtful case, grasp the words and manner of the judge as a guide to lead him out of his perplexity. On the other hand, a presiding judge has no way to measure the effect of his interruption. The very fact that he takes a witness away from the attorney for examination may, in the tense atmosphere of the trial, lead to great prejudice.

In the more recent case of *State v. Jacobsen,* 78 Wn.2d 491, 495, 477 P.2d 1 (1970), we said:

The purpose of Const. art. 4, § 16 is to prevent the jury from being influenced by knowledge conveyed to it by the trial judge as to his opinion of the evidence submitted. In keeping with this purpose, we have consistently held that this constitutional prohibition forbids only those words or actions which have the effect of conveying to the jury a personal opinion of the trial judge regarding the credibility, weight or sufficiency of some evidence introduced at the trial. . . .

In determining whether words or actions amount to a comment on the evidence, we look to the facts and circumstances of the case. It is, of course, possible that the personal opinion of a trial judge may be conveyed both directly and by implication.

(Citations omitted.)

Only last year we again reviewed the applicability of Const. art. 4, § 16:

A trial judge should not enter into the "fray of combat" nor assume the role of counsel. . . . An isolated instance of such conduct may be deemed harmless error, however, if it cannot be said to violate constitutional

bounds of judicial comment. Const. art. 4, § 16. This is particularly true if the response appears invited and represents a natural, limited reaction to an immediate stimulus. In such instances, potential error may be cured by an instruction, if requested. . . . On the other hand, the cumulative effect of repeated interjections by the court may constitute reversible error. In the instant case, we believe the trial court, perhaps inadvertently without meaning to do so, actively interceded in the trial more frequently and at greater length than the circumstances warranted.

(Citations omitted.) *Egede–Nissen v. Crystal Mountain, Inc.,* 93 Wn.2d 127, 141, 606 P.2d 1214 (1980).

■■ While a trial judge may, of course, question witnesses (*Egede–Nissen v. Crystal Mountain, Inc., supra*), and ask clarifying questions (*State v. Brown,* 31 Wn.2d 475, 197 P.2d 590, 202 P.2d 461 (1948)), "it must [not] appear that the court's attitude toward the merits of the cause [is] reasonably inferable from the nature or manner of the court's statements." *State v. Carothers,* 84 Wn.2d 256, 267, 525 P.2d 731 (1974).

The questions of the trial court went far beyond clarifying questions to a witness. It is clear from the report of proceedings that at the end of the prosecutor's examination there was evidence sufficient to prove the crime of indecent liberties but not the crime of first degree statutory rape. The facts in this case show a clear violation of Const. art. 4, § 16. Therefore, in order for the error to be held harmless, "the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967); *State v. Stephens,* 93 Wn.2d 186, 607 P.2d 304 (1980). This we cannot do. Without the questions of the court to A. and the answers they evoked, the record is insufficient to prove defendant committed first degree statutory rape. The prosecutor did not prove the case; the court did.

We are mindful of the heinous nature of the crime alleged as well as the extreme youth of the prosecutor's

only witness. While these are persuasive factors, they are outweighed by the necessity to maintain constitutional safeguards for all, the innocent and the guilty alike.

Reversed.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, HICKS, WILLIAMS, DORE, and DIMMICK, JJ., concur.