FILED
COURT OF APPEALS
DIVISION II

2013 DEC 10 AM 9:55

STATE OF WASHINGTON

BY_____
             DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CITY OF VANCOUVER, | No. 43682-5-II |
| Respondent, | |
| v. | |
| ALBERT MCCLURE, | UNPUBLISHED OPINION |
| Appellant. | |

HUNT, J — Albert McClure appeals his district court jury trial conviction for stalking, which the superior court affirmed on direct appeal. He argues that some of the trial court's remarks during its case summary for the jury venire were prejudicial unconstitutional comments on the evidence. Holding that any error was harmless, we affirm.

## FACTS

### I. STALKING

Between April and August 2010, Erika Hamilton worked at a Vancouver, Washington Subway restaurant, which Albert McClure patronized several times per week. On other occasions, Hamilton observed McClure drive past the Subway, without coming inside. McClure would usually come by the restaurant during the late evening, when Hamilton was the sole employee.

From the outset, McClure was flirtatious with Hamilton: He asked whether she had a boyfriend, told her that she was attractive, commented that his son would think she was pretty,

and asked for her personal cell phone number. She became alarmed when he asked whether she had ever been "stalked" before. Clerk's Papers (CP) at 144. Hamilton felt more alarmed and frightened as these incidents multiplied, especially when she would find McClure waiting outside in the parking lot almost an hour after he had finished eating inside the restaurant. She wrote down McClure's license plate number and took a photograph of his car. One night she observed a car of the type that McClure owned follow her from the restaurant; she feared he was following her home. On another occasion, she was "very shooken up" when she heard someone walking outside of her house. CP at 150.

Hamilton asked her employer to change her shift permanently so she could avoid working alone during those periods when McClure usually frequented the restaurant; her employer refused. So Hamilton began closing the restaurant early; and she asked her grandfather to come be with her at the restaurant when she was working there alone.

Hamilton feared that her repeated rebuffs of McClure's overtures would upset him and that he would become aggressive or hurt her. One day, for example, he became angry when she refused to go out on his boat with him. And after Hamilton closed the restaurant on August 9, she received a call on the restaurant's business line from an unidentified man, who disguised his voice and said that he had been thinking about her and would go crazy if he could not have her. This call caused Hamilton to shake with fear; she was terrified. The next day Hamilton reported the incident to the police department. Officer Sam Abdhala interviewed Hamilton at the restaurant and observed that she was shaking and "genuinely scared." CP at 196.

## II. PROCEDURE

The City of Vancouver charged McClure with one count of stalking. He requested a jury trial. Before trial began, the Clark County District Court summarized the case to the jury venire as follows:

> [T]o explain why we're all sort of gathered here together is the City of Vancouver has brought a charge forward against Albert McClure. The *charge* against Mr. McClure is that of called stalking where it's alleged in the period of time of April 10th, 2010 to August 10th, 2010 without lawful authority he did intentionally and repeatedly harass or follow a person by the name of Erika Hamilton and so you understand again *the nature of the case* is that Ms. Hamilton works at a Subway sandwich shop. I think she was of age 17 at the time if I remember correctly and *allegations are going to be* and obviously get more specific as to the times that maybe as much as dozens of times he went into that particular store, chatted with her, asked her I guess for dating [purposes] I think if she wanted to go on a date with him and at some point in time maybe even asked her if she'd ever been stalked before. So *they're going to get into a lot more details* but that's sort of what I'll call the flavor of the case that *she obviously felt uncomfortable* and eventually notified the police and that ended up being charged with the offense of stalking. Okay? And to that particular charge he's entered a plea of not guilty.

CP at 28 (emphasis added). McClure neither objected nor asked the trial court to instruct the potential jurors to disregard any of this summary. Eventually the court empanelled a jury and tried the case.

Before closing arguments, the trial court instructed the jury that if it appeared he had commented on the evidence during trial, he had not done so intentionally and that the jurors should disregard such comments. The trial court also instructed the jurors that (1) it was their duty to decide the facts of the case based only on evidence presented during trial and on their role as the sole judge of the witnesses' credibility; and (2) the City had the burden to prove each element of the crime of stalking beyond a reasonable doubt, explaining that a reasonable doubt is one for which a reason exists and may rise from the evidence or lack of evidence. The jury

No. 43682-5-II

convicted McClure of stalking as charged. McClure appealed to the Clark County Superior Court under RALJ 1.1(a).

The superior court affirmed, ruling, in part, that the trial court's statements were not comments on the evidence. McClure sought discretionary review of the superior court's decision on multiple grounds.

Our court commissioner granted discretionary review on the sole issue that satisfied RAP 2.3(d)[1]—whether two statements he identified from the trial court's jury venire case summary constituted prejudicial unconstitutional comments on the evidence: (1) that McClure had asked Hamilton to go on a date; and (2) that McClure's actions had made her "obviously"[2] uncomfortable. As a result, the scope of this discretionary review is very narrow, and we circumscribe our analysis accordingly.

## ANALYSIS

McClure argues that the district court's oral description of the case for the jury venire was a prejudicial unconstitutional comment on the evidence because (1) some statements implied that the trial court believed the stalking charge against him was true; (2) the court's comments tainted the entire trial; and (3) the City's evidence was insufficient to overcome the resultant presumed prejudice. These arguments fail.

---

[1] In granting discretionary review, our commissioner noted that if the trial court's case summary for the jury venire was a comment on the evidence, then the superior court's decision affirming McClure's conviction would conflict with the following cases: (1) *State v. Levy*, 156 Wn.2d 709, 719-20, 723, 132 P.3d 1076 (2006) (comments on the evidence are presumed prejudicial); and (2) *State v. Jackman*, 156 Wn.2d 736, 743, 132 P.3d 136 (2006) (once defendant demonstrates that court commented on evidence, burden shifts to State to show lack of prejudice, unless record reflects defendant could not have been prejudiced).

[2] CP at 28.

4

## I. TRIAL COURT DID NOT COMMENT ON EVIDENCE

The Washington State Constitution prohibits a judge from commenting on the evidence. WASH. CONST. art. IV, § 16. A judge's statement is a comment on the evidence if it conveys or implies the court's opinion on the merits or an evaluation of a disputed fact or issue. *State v. Lane*, 125 Wn.2d 825, 838, 889 P.2d 929 (1995). In our view, taken in context, neither of the two trial court statements that our court commissioner designated for our review were opinions about the merits of the case or an evaluation of the evidence. Rather, they merely summarized for the jury pool the *allegations* to give them a "flavor"[3] of what the case would be about.

For example, the trial court did *not* state as fact that McClure had asked Hamilton to go on a date; rather, the trial court predicted:

> [*The*] *allegations are going to be* and obviously get more specific as to the times that maybe as much as dozens of times he went into that particular store, chatted with her, asked her I guess for dating [purposes] *I think* if she wanted to go on a date with him and at some point in time maybe even asked her if she'd ever been stalked before.

CP at 28 (emphasis added). Similarly, the trial court did not state as fact that McClure's actions had made Hamilton "obviously" uncomfortable. Rather, the trial court was merely attempting to summarize the City's allegations against McClure:

> So *they're going to get into a lot more details* but that's sort of what I'll call *the flavor of the case* that *she obviously felt uncomfortable* and eventually notified the police and that ended up being charged with the offense of stalking. Okay? And to that particular charge he's entered a plea of not guilty.

CP at 28 (emphasis added).

---

[3] CP at 28.

The context of these statements demonstrates that the trial court was not intending to express its opinion about McClure's guilt.[4] Rather it was explaining what it expected the case to be about, educating the jury venire for the purpose of ferreting out potential foreknowledge of the case or other factors that might cause individual members of the venire to be unable to sit as fair and impartial jurors. We hold, therefore, that, taken in context, these statements by the trial court were not impermissible comments on the evidence.

## II. HARMLESS ERROR

Even if the trial court's pretrial summary of the case arguably contained improper comments on the evidence, we hold that they did not create reversible error. For purposes of this part of our analysis, we presume without deciding that the trial court's statements about Hamilton's obvious discomfort and McClure's asking her on a date were prejudicial comments on the evidence. *Lane*, 125 Wn.2d at 838. The burden then shifts to the State to disprove this presumption unless the record affirmatively shows the defendant could not have been prejudiced by these comments. *Lane*, 125 Wn.2d at 838-39. We hold that the City has met this burden.

### A. Overwhelming Untainted Evidence

For the record to demonstrate harmless error, overwhelming untainted evidence must have "'necessarily [led] to a finding of guilt.'" *Lane*, 125 Wn.2d at 839 (quoting *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986)). McClure argues that (1) the record cannot show overwhelming untainted evidence to support his

---

[4] We note, from the perspective of hindsight on appellate review, that the alleged error here might have been avoided if the trial court had chosen different language to summarize the case for the venire. Additionally, we note that some trial courts ask the parties to prepare an agreed summary of the case that the court presents to the venire before the parties begin their questioning.

conviction because the trial court's opening summary tainted each piece of evidence that followed at trial; and (2) the City's lack of proof about McClure's knowledge of Hamilton's fear means that the jurors used the trial court's comment to convict him. This argument fails.

McClure already had full review of his district court trial by the superior court, sitting in its appellate capacity. His argument to us, however, ignores the narrow scope of our discretionary review, which is limited to whether the trial court's introductory comments about only *some* evidence expected to be presented at trial were prejudicial. Clearly, we must review the sufficiency of that evidence on which the trial court arguably commented to determine whether the untainted evidence could overcome the presumed prejudice. But none of the trial court's introductory comments in any way alluded to *McClure's knowledge* that his actions made Hamilton feel "uncomfortable,"[5] which is the only element of stalking that McClure actually challenges that falls within the narrow scope of our commissioner's grant of discretionary review.[6]

---

[5] CP at 28.

[6] To convict a person of stalking, a jury must find that (1) the defendant intentionally and repeatedly harassed or repeatedly followed another person; (2) the person harassed or followed was *fearful that the stalker intended to injure the person* and a reasonable person would experience such fear under the circumstances; and (3) the stalker either intended to frighten, to intimidate, or to harass the person or *knew or reasonably should have known* that the person was afraid, intimidated, or harassed. RCW 9A.46.110(1).

McClure contends that the jury must have used the trial court's comments to convict him to compensate for the alleged lack of trial evidence of the third element of stalking—that *he knew, or reasonably should have known*, that Hamilton was afraid of him. Br. of Appellant at 8-9. But the remarks that our commissioner identified as potentially being comments on the evidence related only to the second element of stalking—that Hamilton was fearful that McClure intended to injure her. In contrast, neither of these two remarks (that McClure had asked Hamilton to go on a date or that Hamilton obviously felt uncomfortable) reference the third element, McClure's knowledge. Because McClure's argument would thus take us outside the narrow scope of our discretionary review here, we do not further consider it.

Independent of the trial court's introductory remarks, the record contains overwhelming uncontroverted evidence of the second element of stalking[7] at issue here—that as McClure's comments to Hamilton and McClure's behavior increased in intensity, she became increasingly frightened of him. She testified about (1) her ongoing fear of McClure based on his repeated overtures and other actions, especially when she was working alone late at night; (2) the measures she took to avoid contact with him, including seeking permission to work a different shift, closing the restaurant early, and asking her grandfather to stay with her while she closed up; (3) his anger when she refused his invitation to go out on his boat with him; (4) being afraid that after she had rebuffed his many requests he would assault her or "take [her] somewhere" if she continued to turn him down, CP at 147; (5) her belief that he was not "in the same reality" and "sinking," CP at 147; (6) her fear that McClure was following her home from work; and (7) her terror after the late-evening phone call at work that prompted her call to the police. We hold that this untainted evidence of Hamilton's fear of McClure was more than sufficient to overcome any presumed prejudice from the trial court's comments during its pre-voire dire summary of what evidence it expected the jury would hear at trial.

B. Presumption that Jury Followed Court's Instructions

McClure's argument also ignores (1) the context in which the trial court made its comments (as we previously discussed in part I of this analysis section); and (2) the well-settled presumption that the jury follows the court's instructions, including here, its instruction to disregard any statements it made that might be construed as comments on the evidence. Thus,

---

[7] *See* n.7, above.

even if the above evidence were not sufficient to overcome the presumed prejudice, other contextual factors also preclude reversal here.

For example, an inadvertent, isolated comment followed by a curative instruction may not prejudice a party. *Dybdahl v. Genesco, Inc.*, 42 Wn. App. 486, 490-91, 713 P.2d 113 (1986) (judge's remark not prejudicial where jury instructed to disregard explicit or implied comments on merits of evidence). Prejudice against a criminal defendant may also be cured by a jury instruction that the charges are mere accusations against him or her and that the jurors should rely only on evidence produced at trial to determine guilt. *State v. Sivins*, 138 Wn. App. 52, 61, 155 P.3d 982 (2007). Once such a curative instruction is given, we presume the jury followed it. *Dybdahl*, 42 Wn. App. at 491. Such is the case here.

The record shows that (1) the trial court presented its summary of the case to the entire venire, before the final jurors were selected and sworn; and (2) the focus of this summary was a broad preliminary overview of the allegations against McClure to acquaint the potential jurors with the nature, place, and witnesses of the case in preparation for questioning about whether any jurors had fore-knowledge or reasons why they could not serve impartially. As we previously explained, the trial court consistently prefaced its summary statements with qualifying equivocal phrases like "maybe" and "I think" "[the] allegations [will show]." CP at 28. Moreover, the trial court's single mention of Hamilton's fear was not focused on any specific piece of evidence or a specific jury instruction; rather, it was in the context of explaining the "details" that the City's case was likely going to involve, offered merely to show "the flavor of the case" alleged. CP at 28.

McClure cites no cases addressing prejudicial court comments made pretrial while summarizing the case for a pool of *potential* jurors, as was the situation here. On the contrary, every case of which we are aware analyzes the potential prejudice of court comments about finite pieces of evidence or a jury instruction made *during* trial. *See, e.g., Dybdahl*, 42 Wn. App. at 490 (court's comment about "'startling figures'" in witness's testimony immediately after the testimony did not convey court's opinion on credibility); *State v. Levy*, 156 Wn.2d 709, 726, 132 P.3d 1076 (2006) (court's "mere mention of a fact" in a jury instruction did not imply court's belief that fact was true).

Furthermore, the trial court here expressly explained to the jury venire that the stalking charge against McClure was only an allegation and that he had pled not guilty. At the close of trial, the trial court again instructed the empanelled jury that (1) the burden was on the City to prove the charges beyond a reasonable doubt based on the evidence elicited at trial; (2) they were to ignore anything the court may have said that could be construed as a comment on the evidence; and (3) the jury was the sole decider of the facts of the case and the witnesses' credibility. We presume that the jury followed the court's instructions and, therefore, conclude that in convicting McClure, the jury did not use the trial court's pretrial remarks about

No. 43682-5-II

Hamilton's fear and his having asked her for dates.[8] *See Dybdahl*, 42 Wn. App. at 490.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, J.

I concur:

Johanson, J.

---

[8] Under the circumstances of this case, we further decline McClure's implied invitation to be the first court to find prejudice and reversible error based on the trial court's educational pretrial summary of the case for the entire venire.

No. 43682-5-II

WORSWICK, J. (dissenting) — I disagree with the majority's decision holding that the trial judge's comments were not improper comments on the evidence and that the improper comments on the evidence are harmless. In my opinion, this case should be reversed and remanded. Accordingly, I respectfully dissent.

## I. JUDICIAL COMMENT ON THE EVIDENCE

The majority holds that the trial judge's initial instructions to the jury venire are not improper comments on the evidence because they merely summarized for the jury pool the *allegations* to give them a "flavor" of what the case was about. Majority at 5. I cannot agree that the trial judge's remarks are not a comment on the evidence.

To constitute an improper comment on the evidence, the court need not have expressly conveyed to the jury its personal feelings on an element of the offense; it is sufficient if these feelings are merely implied. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). "A court's statement constitutes a comment on the evidence 'if the court's attitude toward the merits of the case or the court's evaluation relative to the disputed issue is *inferable* from the statement.'" *State v. Sivins*, 138 Wn. App. 52, 58, 155 P.3d 982 (2007) (emphasis added) (quoting *State v. Lane*, 125 Wn.2d 825, 838, 889 P.2d 929 (1995)). A trial judge is prohibited from making even implied comments on the evidence in order "to prevent the jury from being unduly influenced by the court's opinion regarding the credibility, weight, or sufficiency of the evidence." *Sivins*, 138 Wn. App. at 58 (citing *State v. Eisner*, 95 Wn.2d 458, 462, 626 P.2d 10 (1981)).

The majority holds that this trial judge did not comment on the evidence because he qualified his comments as "allegations," or prefaced them by saying, "I think." I cannot agree

12

that by characterizing his comments as allegations, the trial judge avoided making an improper comment on the evidence. Here, the trial judge's lengthy recitation of the facts went beyond giving the jury a "flavor" of the case and implied to the jury that certain facts were true and that Erika Hamilton's testimony was credible. *See Lane*, 125 Wn.2d at 837-38 (instruction stating the reason for witness's sentence being reduced impermissibly implied that witness's testimony as a whole was credible). And the judge's statements that he "thinks" his comments may be correct makes these comments more, not less, problematic, in that it directly conveys the judge's personal feelings about the case.

The trial judge did not merely read the allegations from the information. Instead, the trial judge provided the jury with an impromptu summary of the City of Vancouver's (City) case against Albert McClure which included references to disputed facts. For example, the trial judge referenced McClure asking Erika Hamilton on a date and McClure asking her if she had ever been stalked. Hamilton testified that McClure made these comments to her, but McClure expressly denied ever making such comments. Therefore, the trial judge implied that disputed facts had been proved and that Hamilton was a credible witness.

And in an even more egregious comment, the trial judge stated that "[Hamilton] *obviously* felt uncomfortable." Clerk's Papers (CP) at 28 (emphasis added). An essential element of stalking is that the defendant knew or reasonably should know that the person was afraid, intimidated, or harassed, and that the feeling of fear experienced by the person allegedly being stalked "must be one that a reasonable person in the same situation would experience under all the circumstances." RCW 9A.46.110(1)(b), (c)(ii). By commenting that Hamilton "obviously" felt afraid, the trial judge stated as fact a critical, disputed element that was

13

necessary to prove the State's case. In my opinion, this comment is also an impermissible judicial comment on the evidence.

Here, the trial judge referenced several disputed facts, implied that Hamilton was a credible witness, announced his personal feelings about the case, and stated that an element of the State's case was "obviously" true. I am not persuaded that the trial judge has avoided making improper comments on the evidence by characterizing its comments as "allegations" establishing the "flavor" of the case. Majority at 5. Accordingly, I would hold that the trial judge's comments were improper comments on the evidence which violated article IV, section 16 of the Washington State Constitution.

## II. HARMLESS ERROR

The majority opinion also holds that even if the trial judge's comments were improper comments on the evidence, they were harmless. For purposes of its harmless error analysis, the majority must presume that the judge's comments were an improper comment on the evidence and, additionally, must presume that the improper comments were prejudicial. *Levy*, 156 Wn.2d at 723. The majority does not adequately overcome this required presumption. Accordingly, I disagree.

This is a "he said she said" case, not, as the majority states, a case with "overwhelming uncontroverted evidence." Majority at 8. The majority's opinion essentially ignores the presumption of prejudice that applies when determining whether judicial comments on the evidence are harmless. The majority appears to apply a sufficiency of the evidence standard and assumes the truth of the City's evidence. In my opinion, the trial judge's comments, which implied Hamilton was a credible witness, tainted Hamilton's testimony. Because judicial

14

No. 43682-5-II

comments on the evidence are presumed to be prejudicial, "overwhelming *untainted* evidence" must support the defendant's conviction. *Lane*, 125 Wn.2d at 839-40 (emphasis added). Many of the facts proving the elements of stalking were contested; the jury was required to resolve conflicts between Hamilton's and McClure's testimony. Given the presumption of prejudice, I cannot consider Hamilton's testimony to be untainted evidence. Because the City relied on Hamilton's tainted testimony to prove several of the essential elements of stalking, there is not overwhelming, untainted evidence supporting the jury's verdict.

To prove McClure committed the crime of stalking, the City was required to prove that (1) McClure intentionally and repeatedly harassed or repeatedly followed Hamilton, (2) Hamilton was placed in fear that McClure intended to injure her, (3) Hamilton's fear must have been "one that a reasonable person in the same situation would experience under all the circumstances," and (4) McClure either (a) intended to frighten, intimidate, or harass Hamilton; or (b) knew or reasonably should have known that Hamilton was afraid, intimidated, or harassed even if McClure did not intend to frighten, intimidate, or harass Hamilton. RCW 9A.46.110(1).

I agree that there was overwhelming, untainted evidence establishing that Hamilton was actually afraid. The City presented evidence from Hamilton's grandfather and the police officer who responded to her complaint. Both witnesses testified that she appeared afraid. However, the City relied exclusively on tainted evidence to prove other elements of stalking including (1) that McClure repeatedly followed or harassed her, (2) Hamilton's fear was reasonable, and (3) McClure knew or should have known that Hamilton was afraid, intimidated, or harassed.

15

A.      *Repeatedly Followed or Harassed*

The trial judge's comments affected the City's evidence proving that McClure repeatedly harassed or followed Hamilton. Hamilton testified that McClure came into the Subway restaurant almost every time that she was working and would stay in or around the store for long periods of time while she was working. She also testified that a car similar to McClure's followed her home one night and an unidentified person called her at the Subway making comments like "I'm going to go crazy if I can't have you." CP at 150. In contrast, McClure testified that he never spent more than approximately 15 minutes in the Subway. McClure also testified that he was not following Hamilton and had never been to her house. There was no evidence that McClure was the individual who either was walking outside Hamilton's house, or who was the "unidentified man" who had called her on the restaurant's business line.

If the trial judge's comments did not taint Hamilton's testimony by implying she was a credible witness, Hamilton's testimony would be overwhelming evidence proving that McClure repeatedly harassed or followed her. And even though the trial judge implied that Hamilton's testimony was credible, I would consider Hamilton's testimony overwhelming if it were uncontroverted. However, McClure's testimony contradicted Hamilton's testimony on every point required to prove he repeatedly followed or harassed Hamilton and, as a result, there was not overwhelming, untainted evidence supporting the essential element of stalking that McClure repeatedly followed or harassed Hamilton.

B.      *Reasonable Fear*

The City was also required to prove that Hamilton's fear was fear "that a reasonable person in the same situation would experience under all the circumstances." RCW

16

9A.46.110(1)(b). When the trial judge commented that Hamilton "obviously felt uncomfortable" (CP at 28), he implied that (1) the facts Hamilton would testify to were true and (2) those facts would "obviously" make any person feel afraid. No other witness testified that he or she would feel afraid under the same circumstances. McClure testified that he visited the Subway for no more than 15 minutes at a time and his conversations with Hamilton were limited to impersonal, casual conversation while he ordered food.

Hamilton's untainted testimony *could* have been sufficient evidence to allow a reasonable jury to find that a reasonable person would be afraid under those circumstances. However, McClure testified to circumstances under which no reasonable person would be afraid. Without Hamilton's testimony, the City could not prove that a reasonable person would feel afraid under the circumstances. Accordingly, there is not untainted evidence that establishes an essential element of stalking.

C.    *Knew or Should Have Known*

In addition, the trial judge's comments tainted the evidence proving that McClure reasonably should have known that Hamilton was afraid, intimidated, or harassed. RCW 9A.46.110(1)(c)(ii). In addition to her other testimony, Hamilton testified that McClure asked her if she had ever been stalked before, told her she was pretty, and asked for her personal cell phone number. Hamilton also testified that McClure had asked her out on a date and invited her to go on his boat. Like other aspects of Hamilton's testimony, this testimony was directly contradicted by McClure's testimony. McClure testified that he never asked Hamilton on a date. Although he admitted that he made a passing comment about taking Hamilton on his boat, he did not wait for a response, and never got angry at her for not accompanying him on his boat.

McClure also testified that he engaged in limited casual conversation with Hamilton while she was serving him. Moreover, Hamilton did not tell McClure to stop coming to the restaurant. Hamilton did not tell McClure that he was making her uneasy. McClure denied knowing that Hamilton was alarmed or frightened.

If the facts to which Hamilton testified were true, a reasonable jury could find that McClure knew or should have known that he was frightening, intimidating, or harassing Hamilton.[9] But some of the trial judge's comments directly implied that the facts Hamilton testified to were true. For example, the trial judge commented that McClure asked Hamilton out on a date, a fact which was disputed by McClure's testimony. The City's argument that McClure should have known Hamilton felt afraid, intimidated, or harassed must have rested on the assumption that a person should know that consistently engaging in inappropriate, overly personal conversation with a stranger would be frightening, intimidating, or harassing. The trial judge's comments implied the existence of disputed facts which established that McClure did engage in overly personal conversations with Hamilton while she was at work. Therefore, the City also relied on tainted evidence to prove that McClure should have known that Hamilton was afraid, intimidated, or harassed.

---

[9] It does not appear that the City argued below that McClure intended to frighten, intimidate, or harass Hamilton or that he knew she was afraid, intimidated, or harassed. There is uncontroverted evidence in the record that Hamilton never told McClure he was upsetting her or that she wanted him to leave her alone. Lack of notice is not a defense to stalking if the alleged stalker was intending to intimidate or harass, but there is no evidence in the record that McClure intended to frighten, intimidate, or harass Hamilton. RCW 9A.46.110(2)(a). And because the uncontroverted evidence in the record establishes that McClure did not know Hamilton was afraid, intimidated, or harassed, I limit my analysis to whether the trial judge's comments tainted the evidence proving that McClure should have known that Hamilton was afraid, intimidated, or harassed.

18

The majority's analysis of the effect of the trial judge's comments is too narrowly applied to the evidence required to prove the essential elements of stalking. In my opinion, the trial judge's improper comments on the evidence tainted evidence necessary to prove several essential elements of stalking. Accordingly, the trial judge's improper comments on the evidence cannot be considered harmless.

D.     *Remedial Instruction*

Finally, the majority relies on the presumption that the jury followed the trial judge's instruction to disregard any implied comments on the evidence. I agree that prejudice resulting from an isolated or inadvertent judicial comment on the evidence may be cured by an instruction to the jury. *Sivins*, 138 Wn. App. at 61 (citing *Eisner*, 95 Wn.2d at 463). However, the trial judge's comments in this case were neither isolated nor trivial. Therefore, I do not believe they could be cured by an instruction to the jury.

For the above reasons, I disagree with the majority's opinion holding that the trial judge's comments in this case were not improper judicial comments on the evidence or that the trial judge's comments were harmless. I would reverse McClure's convictions and remand for further proceedings. Accordingly, I respectfully dissent.

Worswick, C.J.