# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53432-1-II |
| Appellant, | |
| v. | |
| MATTHEW J. PERRON, | UNPUBLISHED OPINION |
| Respondent. | |

MELNICK, J. — A police officer initiated a traffic stop of Matthew Perron's vehicle shortly after a shooting incident. The stop led to Perron's arrest. The State charged Perron with robbery in the first degree, two counts of assault in the third degree, possession of heroin, and possession of methamphetamine. The trial court granted Perron's motion to suppress physical evidence seized from the vehicle pursuant to a search warrant after concluding that the officer did not have reasonable suspicion to perform an investigative stop.

The State appeals, arguing that the court made erroneous conclusions of law based on several findings of fact that were not supported by substantial evidence. The State argues that the officer had reasonable suspicion to initiate the stop, and that the court erred in suppressing other evidence found in the vehicle, including a cell phone belonging to another person in the trunk of the car, without inquiring into Perron's privacy interest in it.

Because the court improperly relied on a document that had not been admitted into evidence, the court's findings are not supported by substantial evidence. We reverse the court's ruling that the officer did not have a reasonable suspicion to stop Perron's vehicle. We also reverse the order suppressing evidence found in the vehicle and the order dismissing the drug charges. We remand for a new hearing.[1]

## FACTS

On January 27, 2019, Perron was involved in a shooting at approximately 4:00 a.m. Perron fled the scene in his car with one companion in the passenger seat and another in the trunk. Within 15 minutes after the incident, Hoquiam Police Officer David Peterson observed a car matching the description of the one used in the shooting incident. It was illegally parked and had the headlights on. Peterson initiated a traffic stop, which led to the arrest of Perron and the two passengers. Police later searched the vehicle pursuant to a search warrant[2] and found a backpack containing controlled substances in the back seat. A cell phone belonging to the man hiding in the trunk and a safe also containing controlled substances were found in the trunk of the car.

The State charged Perron with robbery in the first degree, two counts of assault in the third degree, possession of heroin, and possession of methamphetamine.[3] Perron moved to suppress the evidence found in the car, arguing that Peterson lacked reasonable suspicion to stop the car. Perron

---

[1] The State did not ask us to determine if Peterson had a reasonable suspicion to stop Perron. The State has asked for a new suppression hearing on all issues.

[2] The search warrant and supporting documentation are not in the record.

[3] This appeal only involves the drug charges. Our record is silent as to what happened to the other charges.

attached a copy of Peterson's police report to the motion. The report included a computer aided dispatch (CAD) log that detailed the times and description of information given to police dispatch. The court held a suppression hearing. Only Peterson testified regarding the stop.

Peterson heard from dispatch that a shooting occurred in Aberdeen at about 4:00 a.m. The incident occurred close to the city line between Aberdeen and Hoquiam. Dispatch reported that the suspects left the scene in a small gray car. Peterson drove towards Aberdeen to search for the suspects' vehicle in case they went to Hoquiam.

At 4:14 a.m., Peterson encountered a small gray vehicle in a residential area less than one mile from the shooting. It had its headlights on, and was parked on the wrong side of the road on a residential street. At 4:16 a.m., the car drove west and Peterson followed. He observed two occupants and provided the plate number to dispatch. The car turned south then west again and drove a few blocks before turning north and then west on the same street that Peterson first saw it, going the same direction as it had before it drove away. Peterson explained that his suspicion that the occupants were the suspects he was looking for was based on the color and size of the car, the earliness of the hour, and the odd route taken by the driver.[4] Peterson did not believe dispatch reported any conflicting information about the color or make and model of the car.

On cross-examination, Perron asked Peterson to review the CAD log and see if it included an entry that at 4:12 a.m. dispatch received information from an identified caller who saw two males leaving in a black car, and an entry at 4:14 a.m. that the same caller told dispatch that the car was black and had a very loud muffler. Peterson confirmed that he could see those entries on the CAD log.

___

[4] Peterson stated "I kind of questioned why would it be on Cherry Street, turn onto Sumner, accelerate, and then turn back onto Cherry Street to go the same direction, I just found it odd." Report of Proceedings (RP) at 69.

On redirect, Peterson stated that he did not read the CAD log prior to initiating the stop. He reiterated that the only description of the vehicle he remembered receiving from dispatch was that it was a small gray passenger car.

The court then also questioned Peterson:

> [The Court]: . . . So you got the information from the anonymous tip saying it was a small gray car, but you're saying you didn't get the updated information through dispatch of the second identified informant saying it was a black car with a loud muffler.
> [Peterson]: Your Honor, I can't recall if that was said or not.
> [The Court]: So you may have had that information before you initiated the traffic stop?
> [Peterson]: From what I recall, dispatch said it was a small gray passenger car.
> [The Court]: Is there any way you can verify whether or not you would have had that information prior to initiating the traffic stop?
> [Peterson]: Through, I guess, the recorded dispatch.

Report of Proceedings (RP) at 75.

The court then asked if the second call about the car being black with a loud muffler came in before the initiation of the traffic stop. Peterson stated that dispatch received the second call "at 4:13" and he first informed dispatch he was following the vehicle at 4:16 a.m. RP at 76. He confirmed that dispatch received the information about the car being black before he initiated the traffic stop.

The court ruled that Peterson did not have reasonable suspicion to stop the car and granted the motion to suppress all physical items of evidence located in the vehicle.

It entered the following findings of fact:

2.1     On January 27, 2019, at 4:10 a.m., Officer Peterson heard through dispatch a shooting occurred at 1006 Ash Street, in Aberdeen, Washington, and suspects left the location down the hill (going south).

2.2     At 4:10 a.m., dispatch received an anonymous tip stating the vehicle was small and grey.

4

2.3    At 4:12 a.m., dispatch received another call reporting two males left in a black car. Dispatch noted the address and phone number for this caller.

2.4    At 4:14 a.m., the second caller called dispatch again, provided her full name, and added that the black vehicle contained a very loud muffler.

2.5    Officer Peterson responded to the area via east Hoquiam on Simpson Avenue towards Ash Street (west), looking for the suspect vehicle.

2.6    At approximately 4:14 a.m., Officer Peterson turned onto Cherry Street and noticed a vehicle, with headlights on, parked in the opposite side of the road. Once the vehicle continued to drive, Officer Peterson began to follow this vehicle as it was within a mile from the shooting location.

2.7    The officer followed the vehicle around the block, turning south onto 30th Street, east on Sumner, north on 27th Street, then west on Cherry Street.

2.8    While on 27th Street, the officer notified dispatch of a suspicious vehicle matching the small, grey vehicle description. The officer reported the vehicle's registration (WA BKC1142), which returned to a grey 1990 Toyota Camry owned by "Autowerx" of Aberdeen, WA.

2.9    The officer believed the vehicle was driving at a rapid speed, but did not track or measure the vehicle's speed at any time.

2.10    At 4:16 a.m., Officer Peterson (3P3) tells dispatch he is following the vehicle onto Cherry Street, in Aberdeen.

2.11    The vehicle pulled over in front of 2201 Cherry Street in Aberdeen, where [Perron] resides.

2.12    Once the vehicle stopped, the Officer activated his overheard emergency lights and conducted a stop based on the matching small, grey vehicle description, the area it was located near the time of the call, and its indirect route of travel.

2.13    The Officer did not claim to stop the vehicle based on traffic infractions.

2.14    The Officer testified he did not remember dispatch reporting the second tip (black vehicle with very loud muffler), but dispatch could have reported this to him. He claimed he did not look at the CAD log while following the car.

Clerk's Papers (CP) at 63-64.

Based on those findings of fact, it made the following relevant conclusions of law:

3.2    In order to determine whether Officer Peterson had reasonable suspicion to stop [Perron's] vehicle, this Court considered accordingly the 911 tips, their reliability, and evidence of corroborative observation with regards to presence of criminal activity and reliability of informer's information.  Under a totality of the circumstances standard, this Court holds Officer Peterson did not have reasonable suspicion to stop the vehicle at issue.  Therefore, this was an unlawful stop.

3.3    This Court analyzed this stop, under the totality of the circumstances, under two distinct scenarios: (a) if the officer had only received the first tip (small, grey vehicle), and (b) if the officer had received both tips.  Under either scenario, this Court rules the Officer lacked reasonable suspicion to conduct a traffic stop.

. . . .

3.5    The stop of Mr. Perron's vehicle was an unlawful seizure.  Accordingly, the exclusionary rule ought to be applied.  This Court hereby orders the suppression of the following evidence: any and all physical evidence found in the vehicle, including backpacks, safe, controlled substances, and cell phones.  This includes evidence found the day of the stop or found as a result of search warrants to the vehicle or said cell phones.

CP at 65.

Based on the suppression of the evidence, the court dismissed the two drug charges.  The State appeals.

## ANALYSIS

### I.    LEGAL PRINCIPLES

In reviewing the denial of a motion to suppress, we review the trial court's conclusions of law de novo and its findings of fact used to support those conclusions for substantial evidence.  *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).  Substantial evidence is evidence sufficient to convince a fair-minded person of the truth of the finding.  *State v. Hardgrove*, 154 Wn. App. 182, 185, 225 P.3d 357 (2010).

Unchallenged findings of fact are verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). If there is substantial evidence to support the finding of the trial court, it will not be disturbed. *State v. Chapman*, 84 Wn.2d 373, 376, 526 P.2d 64 (1974).

II.      CHALLENGED FINDINGS OF FACT

The State argues that the CAD report relied on by the court in making its findings of fact is "a hearsay document . . . [that] was never identified, stipulated to, or admitted into evidence." Br. of Appellant at 3. As a result, it argues that the court's consideration of the report amounted to taking judicial notice and it was error. The State also contends that the court also erroneously took judicial notice of what it believed a police dispatcher would have done. The State argues that without this improperly considered evidence and belief, findings of fact 2.2, 2.3, 2.4 and 2.14 are not supported by substantial evidence. Without those findings of fact, the resulting conclusions of law are unsupported. Because the court improperly relied on a document that the court did not admit into evidence, and because the court's findings of fact rely on that document, we agree with the State.

The only substantive evidence entered at the suppression hearing came from Peterson. The CAD record was neither offered nor admitted at the hearing. The CAD report was, at the most, impeachment evidence. Impeachment evidence cannot be used to prove substantive facts. *State v. Fliehman*, 35 Wn.2d 243, 245, 212 P.2d 794 (1949). The court's reliance on a document attached to a motion but not admitted into evidence was improper.

We next determine if the challenged findings of fact are supported by substantial evidence from Peterson's testimony.

The challenged findings of fact 2.3[5] and 2.4[6] specifically state the car was black. Neither of these findings is supported by substantial evidence because the court admitted no substantive evidence on that issue. The court questioned Peterson, and in doing so, relied on the unadmitted CAD log; however, Peterson's testimony remained consistent that the car was reported as being gray.[7] No substantive evidence supports a finding that the car was black or had a loud muffler.

The State asserts that 2.14[8] is not a finding of fact at all because it only repeated testimony and did not resolve the question whether Peterson received the information about the black car from dispatch. It argues that the court erred in basing a conclusion of law on this erroneous finding. We agree with the State.

Finding of fact 2.14 is not a finding of fact. It does not resolve a disputed factual issue. Further, it misstates the testimony. Peterson did not testify that "dispatch could have reported [the second tip] to him." CP at 64. When the court asked Peterson "So you may have had that information before you initiated the traffic stop?" he replied, "From what I recall, dispatch said it

---

[5] "At 4:12 a.m., dispatch received another call reporting two males left in a black car. Dispatch noted the address and phone number for this caller." CP at 63.

[6] "At 4:14 a.m., the second caller called dispatch again, provided her full name, and added that the black vehicle contained a very loud muffler" CP at 63.

[7] We note that the court asked Peterson questions in what could be seen as a way to impeach his testimony. While a trial judge may question witnesses and ask clarifying questions, we remind the court that "'it must (not) appear that the court's attitude toward the merits of the cause (is) reasonably inferable from the nature or manner of the court's statements.'" *State v. Eisner*, 95 Wn.2d 458, 463, 626 P.2d 10 (1981) (quoting *State v. Carothers*, 84 Wn.2d 256, 267, 525 P.2d 731 (1974)).

[8] "The Officer testified he did not remember dispatch reporting the second tip (black vehicle with very loud muffler), but dispatch could have reported this to him. He claimed he did not look at the CAD log while following the car." CP at 64.

was a small gray passenger car." RP at 75. Substantial evidence does not support finding of fact 2.14.

The court made findings of fact based on a document not admitted into evidence; therefore, substantial evidence does not support these findings. A de novo review of the court's conclusions of law show it relied on these findings. However, the conclusions do not flow from the other supported findings.[9]

III.    Evidence Seized from Trunk of Car

The State argues that the court erred in suppressing items seized from the trunk of Perron's car, including a cell phone belonging to a person who was found in the trunk of the car, without making a determination that Perron had a privacy interest in that phone.

The court suppressed the cell phone and other items found in the trunk of the car based on its determination that Peterson lacked reasonable suspicion to stop Perron. It did not reach the specific issue raised by the State. Because we remand for a new hearing, we do not consider this issue.[10]

We reverse the court's rulings and remand for a new suppression hearing.

---

[9] We acknowledge that the court added a conclusion that Peterson did not have reasonable suspicion even if it only knew the car was gray. However, this conclusion does not flow from the supported findings. Peterson found the car in question within a mile of the location of the incident and within 5 minutes of receiving the first dispatch report. The vehicle matched the description Peterson received. Further, Peterson saw the vehicle shortly after 4:00 in the morning, in a residential area with minimal traffic. The car was parked the wrong way with its headlights on which, given Peterson's experience with the area, was unusual. The car also took an indirect route, driving around for a few blocks before returning to the same street in the same direction. We do not know what evidence will be presented on remand.

[10] We also note that the police seized the cell phone pursuant to a search warrant. We cannot review whether the warrant provides independent grounds for admitting evidence seized pursuant to its execution. Neither the search warrant nor its supporting affidavit is part of our record.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, P.J.

Cruser, J.