IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>    Respondent,<br><br>    v.<br><br>ELEAZAR RAMOS CABRERA,<br><br>    Appellant. | No. 86528-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — Eleazar Ramos Cabrera[1] was found guilty by jury verdict of robbery in the first degree with a firearm enhancement and assault in the first degree and separately convicted after a bench trial of unlawful possession of a firearm in the first degree. On appeal, Cabrera avers that the trial court improperly commented on the evidence, issued a jury instruction that did not provide jurors the relevant legal standard, and did not timely enter findings of fact and conclusions of law following the bench trial. He further alleges in a pro se statement of additional grounds for review that the prosecutor committed misconduct and he was deprived of his right to effective assistance of counsel. We disagree and affirm.

---

[1] The defendant is identified in the record as Eleazar Ramos Cabrera, Eleazar Cabrera Ramos, and simply Cabrera. We refer to Cabrera by only that portion of his last name, consistent with the manner by which he signed both his judgment and sentence and pro se statement of additional grounds for review.

FACTS

On December 16, 2022 in the town of Snohomish, Washington, Sonya Cobb was preparing to go to sleep for the night in the home that she shared with Michael Nelson.  From her bedroom, she heard the front door to the house open and the sounds of at least two people entering the home.  She attempted to rouse Nelson who was already asleep in bed.  Shortly thereafter, two men with their faces obscured entered Cobb and Nelson's bedroom brandishing firearms and demanding money.  Nelson called out to one of the men, who he thought he recognized as "Pancho," a man for whom Nelson had previously performed work as a mechanic.  One of the men demanded that Cobb hand her cell phone over to him and she complied.  The man then ordered her to get on the ground, but Cobb refused.  As Nelson moved around the end of the bed, one of the men shot him twice.  The men then left, still in possession of Cobb's phone.  Cobb called 911 from Nelson's phone.

Snohomish County Sheriff's Office (SCSO) Deputy Matthew Mattson responded to the scene.  Mattson directed Cobb to use the "Find My iPhone" application on her iPad to locate her stolen phone.[2]  The phone had been discarded at a nearby intersection that Mattson later testified was in "close proximity to the house."  SCSO Detective Gabriel Cimino also responded to the home and, during his investigation, located and photographed two .45 caliber shell casings on the floor of the bedroom and "a .45 caliber slug . . . lodged in the dresser" and "a second bullet hole . . . in the wall."  After the incident, Cobb worked

---

[2] Find My iPhone is an application for Apple phones that assists users in locating their missing devices.

to identify "Pancho" by reaching out to mutual friends and using social media. She shared the results of her efforts with law enforcement, who ultimately determined that "Pancho" was a nickname for Cabrera.

SCSO Deputies Lucas Robinson and Mark Harris also participated in the investigation and eventually arrested Cabrera. Cabrera had been located and followed to a gas station where law enforcement moved to apprehend him when he got out to pump gas. Cabrera fled on foot but was ultimately arrested. Savannah Tate was a passenger in the car Cabrera had been driving at the time of his arrest. Robinson later testified that he saw "a handgun in a holster" when he looked "into the car on the driver's floorboard . . . basically like right around the front of the seat." Robinson also stated that the driver door was left open and he could view the firearm when he was "looking into [the vehicle] from the outside." The vehicle was towed to a secure facility while law enforcement applied for a search warrant.

SCSO Detective William Kleckley submitted the application for and received the warrant. Kleckley later testified that he searched the vehicle pursuant to the warrant and identified the gun found in the passenger compartment of the vehicle as a "Glock 21 .45 caliber handgun." Kleckley recovered a bag containing three boxes of ammunition from the trunk. Kleckley asserted that the .45 caliber ammunition that he found matched the make and caliber of the bullets found inside the firearm retrieved from the vehicle, as well as the bullets and spent shell casings identified in the bedroom.

In February 2023, the State charged Cabrera with one count each of assault in the first degree, robbery in the first degree, and unlawful possession of a firearm in the first degree (UPF1). The court granted Cabrera's motion to bifurcate the trial, with the robbery and assault charges to be tried before a jury and the UPF1 charge to be resolved separately in a bench trial.

The jury trial commenced in October 2023, but the jurors could not agree on a verdict, and the court declared a mistrial. The retrial of the assault and robbery charges began in February 2024. The jury found Cabrera guilty of both charges and found by special verdict that the State had proved the firearm enhancement as to the robbery. The bench trial followed in March, after which the court issued oral findings of fact and conclusions of law in support of its guilty verdict. On March 27, 2024, the court sentenced Cabrera on all three counts. The judge calculated his offender score as 13 on both the robbery and assault and 11 on the UPF1 but rejected in part the prosecutor's recommendation to sentence him to the high end of each standard sentencing range. The court imposed 290 months in prison on the assault, 231 months on the robbery, and 116 months on the UPF1, and ordered the terms to run concurrently. The court also ordered the mandatory additional 60-month term for the firearm enhancement to run consecutively to the base sentences, for a total period of confinement of 350 months, followed by 36 months of community custody upon release from prison.

Cabrera timely appealed. Nine months later, in January 2025, the trial court entered its written findings of fact and conclusions of law from the bench trial after

Cabrera presented that procedural deficiency as an assignment of error in his opening appellate brief.

ANALYSIS

Cabrera avers in his opening brief that a number of errors by the trial judge require reversal in this case. The State responds that not all of his challenges are properly preserved and this panel should decline to consider them. Cabrera separately argues in a pro se statement of additional grounds for review (SAG) that the State violated its discovery obligations, the prosecutor committed misconduct during trial and his defense attorney was ineffective. We consider each of these issues in turn.

I.      Comment on the Evidence

Cabrera first asserts that the trial judge improperly commented on the evidence when explaining an evidentiary ruling to the parties in the presence of the jury and the comment prejudiced him. We disagree.

This court "may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). However, even if a party failed to raise a challenge at trial, we may review a "manifest error affecting a constitutional right." RAP 2.5(a)(3). Our state constitution expressly states that "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." WASH. CONST. art. IV, § 16. As such, judicial comments on the evidence are explicitly prohibited by our state constitution. *State v. Levy*, 156 Wn.2d 709, 719-20, 132 P.3d 1076 (2006); *see also State v. Bogner*, 62 Wn.2d 247, 249-50, 382

P.2d 254 (1963); *State v. Lampshire*, 74 Wn.2d 888, 892-93, 447 P.2d 727 (1968). Having presented a question of constitutional magnitude, Cabrera must also show that the claimed error was manifest in order to satisfy RAP 2.5(a). It is the appellant's burden to prove a manifest error by demonstrating actual prejudice. *State v. Kalebaugh*, 183 Wn.2d 578, 584, 355 P.3d 253 (2015). "[T]here must be a 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" *Id.* (one alteration in original) (internal quotation marks omitted) (quoting *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009)). A judicial statement while in front of the jury constitutes "'a comment on the evidence if the court's attitude toward the merits of the case or the court's evaluation relative to the disputed issue is inferable from the statement.'" *In re Det. of Pouncy,* 144 Wn. App. 609, 621, 184 P.3d 651 (2008) (quoting *State v. Lane,* 125 Wn.2d 825, 838, 889 P.2d 929 (1995)), *aff'd,* 168 Wn.2d 382, 229 P.3d 678 (2010). However, "the court does not comment on the evidence simply by giving its reasons for a ruling." *State v. Dykstra,* 127 Wn. App. 1, 8, 110 P.3d 758 (2005). Significantly, "'it is a fact well and universally known by courts and practitioners that the ordinary juror is always anxious to obtain the opinion of the court on matters which are submitted to [its] discretion, and that such opinion, if known to the juror, has a great influence upon the final determination of the issues.'" *Bogner*, 62 Wn.2d at 249 (quoting *State v. Crotts*, 22 Wash. 245, 250, 60 P. 403 (1900)). Because the issue presented here is one of constitutional magnitude and capable of impacting the juror's assessment of the evidence, we turn to the merits.

Here, during Cobb's cross-examination in the second jury trial, Cabrera's defense counsel inquired into her testimony on a particular point during the first jury trial, insinuating that her testimony on direct examination during the second jury trial conflicted with her prior statements under oath:

> [DEFENSE COUNSEL:] Okay. Now, I want to be clear here, you testified earlier to [the State] that the television in your room was on when the men came into your bedroom?
>
> [COBB:] Yes, it was on.
>
> [DEFENSE COUNSEL:] Okay. Now, do you recall, back in October, you said that your plan was not to read your book or watch television, that you just wanted to go to sleep.
>
> [COBB:] As I'm getting ready for bed, sometimes the TV is on, and sometimes I watch it and sometimes I don't. Sometimes it's background noise.
>
> [DEFENSE COUNSEL:] Okay.
>
> [COBB:] I wasn't really engaged into the television. It was on very low, I remember that.
>
> [DEFENSE COUNSEL:] Okay.
>
> [COBB:] But it was on.
>
> [DEFENSE COUNSEL:] But you didn't mention that in the prior proceeding in this case?
>
> [COBB:] *I don't know if was asked about the volume of the TV.*
>
> [DEFENSE COUNSEL:] But you didn't mention that it was on at all in that prior hearing, did you?
>
> [COBB:] Did you ask me if the TV was on? *I don't believe you did.* I don't remember—
>
> . . . .
>
> [DEFENSE COUNSEL:] You did not say that the television was on during that prior proceeding; correct?

[COBB:] *I was not asked.* If I was, then I might have not said anything, *but I don't remember being asked if the TV was on*. If I was, I'm sorry. A lot was going on.

[DEFENSE COUNSEL:] But you did not say during the prior proceeding—

[STATE]: Your Honor, objection. Asked and answered.

[COBB]: I already told you.

[STATE]: I'm going to object. This has been asked and answered twice now.

[DEFENSE COUNSEL]: I don't believe it has, your Honor.

THE COURT: Hold on. What do you believe has not been asked?

[DEFENSE COUNSEL]: Whether or not she said during the prior proceeding that the television was on.

THE COURT: I believe you asked that question a couple of times and she's responded to it a couple of times now. The objection is sustained.

[DEFENSE COUNSEL]: And, your Honor, my question is whether or not she said it. It's a yes-or-no question. It hasn't been answered.

THE COURT: Hold on, please. Give me a moment, please. Yes, you did ask the question about the TV being on a couple of times and she responded. The objection is sustained.

[DEFENSE COUNSEL]: And, your Honor, I haven't gotten an answer to that question. They were nonresponsive answers.

THE COURT: They weren't. She doesn't have to respond to the question in the way you want her to respond, Counsel. So you asked the question a couple of times. If I go by what you're saying, that means until she gives an answer that is different from the answer that she has provided, that the question hasn't been asked. So what is the question that you believe you haven't asked?

[DEFENSE COUNSEL]: Whether or not she said if the TV was on during the prior proceeding.

THE COURT: All right. Let me go back here.

(Emphasis added.) The court then read the trial transcript back to the parties and continued as follows:

[THE COURT:] So you've asked the witness multiple times and she says she wasn't asked that question.

[DEFENSE COUNSEL]: And, your Honor, the answer—the question isn't whether she was asked if it was on. My question is whether—

THE COURT: No, it's not whether she was asked.

[DEFENSE COUNSEL]: —she said it.

THE COURT: *You asked whether she said it in the prior proceeding.*

[DEFENSE COUNSEL]: Yes.

THE COURT: *And she said no.*

[DEFENSE COUNSEL]: I have not heard that, your Honor.

THE COURT: The objection is sustained.

[DEFENSE COUNSEL]: If that is the record.

THE COURT: That is the record. That is the ruling of the court. The objection is sustained.

(Emphasis added.)

Cabrera contends that the trial court commented on the evidence by stating that Cobb's response to defense counsel's question regarding whether the television was on at the time in question was "no." Here, the context of the asserted error is important. Cabrera continued to pursue this line of questioning

- 9 -

with Cobb to the point that the State objected. The trial judge ruled on the objection, and Cabrera further challenged the ruling. The trial court was forced to review the record of Cobb's testimony in order to more clearly explain to Cabrera why the record supported its ruling on the State's objection. While best practice is to engage in this sort of detailed analysis outside the presence of the jury, it is clear that the trial court here did, in fact, do just that when defense counsel persevered on this point as the jury was excused for further argument immediately after the exchange quoted here.

The court's statement that is the focus of Cabrera's challenge here was not a comment on the evidence. The record does not show that the court stated its attitude toward the merits of the case nor does it show that the jury could infer the court's evaluation of the disputed factual issue from the court's words. The judge did summarize her responses in the negative as "no." But again, the context was important, the jury had heard Cobb's testimony only moments before the judge then explicitly reviewed and read it aloud in explaining his ruling on Cabrera's objection, and the "no" Cabrera now challenges came at the end of that review. This did not convey the judge's attitude towards the merits of the case or his evaluation of a disputed issue.

While Cabrera accurately asserts in briefing that Cobb did not, in fact, answer yes or no to the defense's questions, our inquiry is not so superficial. The question of whether the television was on during the time of the incident was not a disputed issue that went to any of the elements of the charged crimes. The trial judge did not state, or otherwise indicate, that he himself believed the answer to

the defense's question was no, nor did he opine on Cobb's reliability as a witness. Rather, the trial judge, in explaining his ruling on the State's objection that the question had been asked and answered, summarized Cobb's responses, which had focused on her claim that the defense had never asked her the question at the first trial, as "no." Effectively, he interpreted her testimony which, when read in context, appeared to offer an explanation for *why* she had not testified that the television was off at the first trial, without actually offering a definitive yes or no answer. Cabrera asserts in reply that this involved the jury's determination as to Cobb's credibility broadly, which then implicated its ultimate verdict.

Nevertheless, even assuming without deciding that the court commented on the evidence, Cabrera does not show that he was prejudiced by the court's one-word summation of Cobb's responses. Moreover, any potential prejudice would have been cured by the court's instructions to the jury. The judge instructed the jury on two separate occasions, immediately prior to opening statements and following closing argument, to disregard any statement from the judge that might appear to convey an opinion on the evidence:

> Our state constitution prohibits a trial judge from making a comment on the evidence because it is your role to evaluate the evidence. It would be improper for me to express by words or conduct my personal opinion about the value of a particular witness' testimony or an exhibit.
> I will not intentionally do this. If it appears to you that I have indicated in any way my personal opinion concerning any evidence, you must disregard this entirely.

"We presume that a jury will follow the instructions provided to it." *State v. Mohamed,* 186 Wn.2d 235, 244, 375 P.3d 1068 (2016). Nowhere in his briefing does Cabrera analyze this claim in light of this instruction or engage with this

- 11 -

presumption. In fact, in his reply, Cabrera clarifies that the core of this attempt by the defense to impeach Cobb on this point rests on the fact that "Cobb had testified at the first trial that she was not planning to watch any television that night, thereby at least *implying* that the television was off." (Emphasis added.) Cabrera's own characterization of Cobb's testimony on this issue at the first trial establishes that she did not definitively testify that the television was off, undercutting the entire premise of his attempt to impeach her on that basis upon retrial. This, in turn, impedes his ability to meet his burden to show that any such constitutional error was manifest. Because Cabrera has not overcome the presumption that the jury followed the court's instruction to disregard any comment it made that could give the appearance of expressing a personal opinion on the evidence, he has not established actual prejudice. His challenge on this matter fails.

II.    Instructional Error

Cabrera avers the trial judge erred by giving jury instruction No. 6 because the instruction failed to make the "relevant legal standard manifestly clear" to the jury and created a risk of double jeopardy. The State urges us to decline review of this issue, contending that Cabrera failed to raise the argument in the trial court and he cannot prove the instruction amounted to a manifest error that implicates a constitutional right. The State further asserts that even if we reach this challenge, Cabrera cannot establish that "the instruction constitutes reversable error."

Again, we may decline to review claimed errors that were not preserved by objection in the trial court, unless it is a manifest error that implicates a fundamental constitutional right. RAP 2.5(a). The prohibition on double jeopardy originates in

the Fifth Amendment to the United States Constitution and article I, section 14 of the state constitution. As such, this clearly is a question of constitutional magnitude. However, Cabrera must also show that this error was manifest, that is, that the error actually prejudiced him, a burden he cannot meet. *See State v. Kirkman,* 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007).

Cabrera acknowledges his failure to object in the trial court, but avers that he can satisfy the manifest constitutional error standard. Jury instruction No. 6 states, "A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." Jury instruction No. 6 as provided to the jury here precisely followed the language of Washington Pattern Criminal Jury Instruction 3.01. The crux of his challenge to this instruction is the use of the word "should" which he claims is indicative of a suggestion, rather than the more authoritative "shall." Specifically, Cabrera relies on *State v. Sage*[3] to aver that the language provided to the jury gives rise to double jeopardy concerns "because it allowed for multiple punishments for the same offense by creating two offenses where only one was proved." He contends the "permissive language" of jury instruction No. 6 "allowed the jury to conclude that if Cabrera was guilty of either offense, he must also be guilty of the other offense simply because he was present" and notes that the evidence on the assault charge was much stronger than that on the robbery. But, Cabrera cannot demonstrate actual prejudice because *Sage* is unavailing, and he fails to address, much less acknowledge, our Supreme Court's opinion in *State v.*

---

[3] 1 Wn. App. 2d 685, 698, 407 P.3d 359 (2017).

*Mutch*, 171 Wn.2d 646, 254 P.3d 803 (2011). These cases refute his argument that the instruction put him at risk of double jeopardy.

In *Mutch* our State Supreme Court considered the possibility of double jeopardy concerns arising from this same instruction. *Id.* at 661-66. The court expressed some concern that the instructions provided to the jury there "failed to include sufficiently distinctive 'to convict' instructions or an instruction that each count must be based on a separate and distinct criminal act" because the "'to convict' instructions for each count were nearly identical." *Id.* at 662. But after consideration of the entire record, the court held it was "manifestly apparent that the jury found him guilty of five separate acts" to support five different convictions. *Id.* at 665. Crucially, *Mutch* and *Sage* both addressed situations where there were multiple counts of the *same crime* against the *same victim* which heightened the risk that the jury could rely on the same acts to convict on more than one count. *Mutch*, 171 Wn.2d at 665-66; *Sage*, 1 Wn. App. 2d at 694-98. And yet in both cases, the court held that there was no double jeopardy concern. *Mutch*, 171 Wn.2d at 666; *Sage*, 1 Wn. App. 2d at 698. Cabrera offers no compelling argument as to how this same pattern instruction in his trial on two different criminal charges with distinct elements and named victims created a risk of double jeopardy where our Supreme Court concluded that no such possibility existed in a trial on multiple counts of the same crime against the same victim. Because Cabrera has not established a constitutional error, much less one that is manifest, we decline to consider his claimed instructional error further.

III.     Failure To Enter of Findings and Conclusions after Bench Trial

Cabrera next contends that the trial court erred by failing to timely enter written findings of fact and conclusions of law following the bench trial and he was prejudiced by the delay.  In response, the State avers even though the trial court entered its written findings after Cabrera's initial brief was submitted, Cabrera cannot demonstrate prejudice.  The State is correct that Cabrera does not establish an entitlement to appellate relief.

"In a case tried without a jury, the court shall enter findings of fact and conclusions of law.  In giving the decision, the facts found and the conclusions of law shall be separately stated."  CrR 6.1(d).  These written factual findings and legal conclusions "comprise a record that may be reviewed on appeal."  *State v. Banks*, 149 Wn.2d 38, 43, 65 P.3d 1198 (2003).  When the trial court fails to comply with its obligations under CrR 6.1, the defendant has the burden of proving prejudice.  *State v. Pruitt,* 145 Wn. App. 784, 794, 187 P.3d 326 (2008).  "[A]n appellant may show prejudice by untimely filed findings and conclusions.  Reversal is warranted if the defendant can show actual prejudice from the lack of findings." *Id.*  But, we will not infer prejudice solely from delayed entry.  *State v. Head*, 136 Wn.2d 619, 625, 964 P.2d 1187 (1998).  This is so because the trial court may remedy its failure to timely enter findings and conclusions after an appeal has been filed pursuant to RAP 7.2(e).  *Pruitt*, 145 Wn. App at 794.

Cabrera's UPF1 charge was resolved at a bench trial in March 2024.  Cabrera's notice of appeal followed in April.  In December of that year, Cabrera filed his opening brief and assigned error to the trial court's failure to enter its

written findings and conclusions from the bench trial. Cabrera's analysis regarding this challenge only stated that

> [t]he proper remedy for the failure to enter written findings of fact and conclusions of law under CrR 6.1(d) is remand to the trial court for entry of findings. Assuming written findings are ultimately entered, reversal will be required if the delay prejudices Cabrera. Cabrera reserves the right to offer further argument depending on the content of any written findings.

(Citations omitted.) The trial court entered its written findings of fact and conclusion of law the next month, in January 2025. Cabrera filed his reply brief the following May. There, he did not address this assignment of error, present argument or authority in support of any prejudice from this delay, or contest any part of the court's findings of fact or conclusions of law. As such, he has abandoned this challenge and we decline to reach the merits.

IV.     Statement of Additional Grounds for Review

Cabrera also submitted a SAG in which he challenges certain conduct by the prosecutor and his trial counsel.[4] None of his additional grounds have merit.

A.     Discovery Violation

Cabrera asserts that the State failed to turn over a cell phone video recording taken by Tate, the passenger in his vehicle, at the time of his arrest. He avers the video would prove that the firearm found in the car was planted by the person who actually shot Nelson and shows a variety of misconduct by the arresting officers.

---

[4] Cabrera filed a second untimely SAG which we decline to review. RAP 10.10(d).

The State has an obligation to produce exculpatory evidence in its possession. This includes "any material and information within the prosecuting attorney's knowledge which tends to negate defendant's guilt as to the offenses charged." CrR 4.7(a)(3). This duty "is limited to material and information within the knowledge, possession or control of member of the prosecuting attorney's staff." CrR 4.7(a)(4). "Due process requires the prosecution to disclose material evidence favorable to the accused which, if suppressed, would deprive the defendant of a fair trial." *State v. MacDonald*, 122 Wn. App. 804, 809, 95 P.3d 1248 (2004). "[E]vidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 809-10. The prosecution has "an obligation to turn over evidence in its possession or knowledge which is both favorable to the defendant and material to guilt or punishment." *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 887, 828 P.2d 1086 (1992). In order to demonstrate a discovery violation by the State, the defense must show that the State failed to disclose evidence favorable to the defense, the State suppressed the evidence "either willfully or inadvertently," and the defense was prejudiced by the suppression of the evidence. *State v. Davila,* 183 Wn. App. 154, 167, 333 P.3d 459 (2014), *aff'd*, 184 Wn.2d 55, 357 P.3d 636 (2015).

Cabrera claims that the video captured by Tate would show misconduct by the arresting officers. He makes several allegations in that regard, including that officers moved the seat of the car to reveal the gun but then falsely testified at trial that the gun was in plain view and that evidence regarding the firearm would have

been excluded if the court had the benefit of the video to show the manipulation of the car seat and the illegality of the search. He also avers that the video would show the racial bias of the arresting officers.

Cabrera fails to establish error as he does not identify any portion of the record that demonstrates the cell phone footage was in the exclusive possession of the State and otherwise unattainable, defense counsel requested it, and the prosecution wrongly refused to disclose it. Under long established case law, the defendant must request the evidence from the State, who will furnish it if it is in their possession, or take other efforts to procure it. If the State fails to provide evidence in its possession, the court can compel the State to produce it or grant a subpoena to obtain the information. *See State v. Blackwell,* 120 Wn.2d 822, 826-28, 845 P.2d 1017 (1993); CrR 4.7(a), (d). While the record shows extensive pretrial discussion of issues related to discovery, which suggests that both the State and defense were attentive to that stage of the proceedings, the cell phone footage at issue in this SAG argument is not referenced. We do not address "matters outside the record, a personal restraint petition is the vehicle for bringing those matters before the court." *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995). We decline to consider this issue further.

B.    Ineffective Assistance of Counsel

Cabrera next asserts that his trial counsel was ineffective due to their failure to properly investigate, premised on Cabrera's contentions regarding the purportedly exculpatory Tate video, and for not taking "the gift of the hung jury," a

reiteration of his complaints regarding the video and other disagreement about trial tactics.

To prevail on a claim of ineffective assistance of counsel (IAC) the defendant must show that "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "If either part of the test is not satisfied, the inquiry need go no further." *State v. Hendrickson,* 129 Wn.2d 61, 78, 917 P.2d 563 (1996). We extend "great deference to trial counsel's performance" and apply "a strong presumption that counsel was effective." *State v. Crow,* 8 Wn. App. 2d 480, 507, 438 P.3d 541 (2019). To be deficient, counsel's performance must fall "below an objective standard of reasonableness based on a consideration of all the circumstances." *Id.* A difference of opinion regarding trial strategy does not render counsel's performance deficient. *Hendrickson,* 129 Wn.2d at 77-78.

Trial counsel has a duty to investigate the case, and a failure to carry out this duty can be the basis for an IAC claim. *State v. Jones,* 183 Wn.2d 327, 339, 352 P.3d 776 (2015). "'[S]trategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgment support limitations on investigation.'" *Id.* (alteration in original) (quoting *Strickland,* 466 U.S. at 690-91). However, in order to establish prejudice based on a failure to investigate, the defendant must demonstrate "a reasonable likelihood that the investigation would have produced useful information not already known to the defendant's trial counsel." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 739, 101 P.3d 1 (2004). To prevail on a claim of IAC based on failure to

investigate, the defendant must show that the evidence "'would probably have changed the outcome' of the trial." *Rice*, 118 Wn.2d at 893 (quoting *In re Pers. Restraint of Jefferies*, 114 Wn.2d 485, 493, 789 P.2d 731 (1990)). A defendant must provide "more than speculation, conjecture, or inadmissible hearsay." *Id.* at 886. As explained in Section IV.A, *supra*, the record before us contains no evidence regarding Tate's cell phone video. While his SAG asserts that Tate's cell phone was seized by law enforcement and listed in discovery, he provides no information regarding any search of the phone by law enforcement and whether its contents, including the video in question, were ever examined by the State or defense counsel. More critically, he makes no assertion that he advised his defense counsel that Tate's cell phone might contain such footage so that it could be examined.

The second basis for Cabrera's IAC claim relies entirely on events that occurred in the first jury trial that ended in a mistrial. He essentially argues that defense counsel's tactics as to certain evidence in that first trial led to the hung jury, instead of an acquittal. The matter before us arises from the judgment and sentence entered on the retrial, but more critically, Cabrera's difference of opinion regarding counsel's trial strategy does not establish that counsel's performance was so deficient as to be ineffective. *See Hendrickson,* 129 Wn.2d at 77-78. Further, the record establishes that defense counsel did in fact move to exclude certain other video footage during motions in limine before the retrial, relying on the precise case Cabrera avers counsel should have argued. Cabrera fails to establish that counsel was ineffective.

C.    Prosecutorial Misconduct

Finally, Cabrera asserts that prosecutorial misconduct requires reversal. Specifically, he contends that the trial prosecutor improperly vouched for State's witnesses in reviewing testimony of arresting officers in closing argument and the prosecutor "gave his opinion, not the law to convict" when "explaining the law of accomplice liability to the jury."  However, Cabrera only cites to statements the prosecutor made in the first trial that ended in a hung jury in support of these claims.  Because he does not contend that this purportedly improper conduct was repeated in the trial that resulted in his convictions, we decline to reach the merits of this challenge.

Affirmed.

WE CONCUR:

Díaz, J.
_____

_____, ACJ

- 21 -